UNITED STATES of America,
Plaintiff-Appellee,

v.

Phillip J. MATTUCCI et al.,
Defendants-Appellants.

No. 73–1900.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1974.

Decided Aug. 22, 1974.

884

Thomas A. Livingston, John L. Doherty, Pittsburgh, Pa., for appellants; Dennis J. Clark, Pittsburgh, Pa., on brief.

W. Robinson Watters, Asst. U. S. Atty., for appellee; William W. Milligan, U. S. Atty., Columbus, Ohio, on brief.

Before WEICK, McCREE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

The five appellants in this matter were convicted of operating an illegal gambling business in violation of 18 U.

S.C. § 1955, a part of Title VIII of the Organized Crime Control Act of 1970.[1]

To constitute the basis for an offense under Section 1955, the gambling business must violate a relevant state or local law,[2] have five or more persons involved in its conduct, and either be in substantial continuous operation for more than 30 days or have a gross revenue of $2,000 or more in a single day.

Commencing August 18, 1972 government agents conducted a surveillance of the Midway Club, located in Steubenville, Ohio, which culminated in a raid of the premises on October 12, 1972. Defendants-Appellants were subsequently charged with violating the federal act.

The evidence presented to the jury revealed that Phillip Mattucci was the owner of the Midway Club and that defendants Betras, DeBellis and Barilla were employed by Mattucci as dealers in a gambling game that was operated on the premises. The fifth defendant, James Simone, was essentially a guard and a doorman. The gambling activity carried on at the Midway Club was a form of dice game known as "Barbut", a

---

[1]. 18 U.S.C. § 1955 provides, in pertinent part:

§ 1955. Prohibition of illegal gambling businesses

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

\*      \*      \*      \*      \*

[2]. The sections of the Ohio Revised Code relied on in the indictment here are:

2915.01 Permitting room to be used for gambling.

No person shall keep a room, building, arbor, booth, shed, tenement, canalboat, or other watercraft, to be used or occupied for gambling, or knowingly permit it to be so used or occupied, or being the owner thereof rent it to be so used or occupied. An owner of such building, tenement, or watercraft knowing that a device is used or kept therein for gambling, who does not forthwith make complaint against the person so using or keeping it has knowingly permitted it to be used and occupied for such purpose.

Whoever violates this section shall be fined not less than thirty nor more than five hundred dollars or imprisoned not less than ten nor more than thirty days, or both.

2915.06 Betting. Playing a game or making bet for money.

No person shall play a game for money or other thing of value or make a wager for money or other thing of value.

Whoever violates this section shall be fined not more than one hundred dollars or imprisoned not less than ten days nor more than six months, or both.

2915.14 Common gambler.

No person shall engage in gambling for a livelihood, or be without a fixed residence and in the habit or practice of gambling. Whoever violates this section shall be fined not less than fifty nor more than five hundred dollars and imprisoned not less than ten nor more than ninety days, and shall give security in the sum of five hundred dollars against further violation of this section for one year.

2915.15 Exhibiting gambling devices for gain.

No person shall keep or exhibit for gain or to win money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, other than as is defined in sections 2915.10, 2915.12 and 2915.16 of the Revised Code, or keep or exhibit a billiard table for the purpose of gambling or allow it to be so used. Whoever violates this section shall be fined not less than fifty nor more than five hundred dollars and imprisoned not less than ten nor more than ninety days, and shall give security in the sum of five hundred dollars against further violation of this section for one year.

game in which customers bet against one another but not against the house. The proofs showed that in a Barbut game, the house does not itself gamble, but provides the facility and the dealers who actually handle the dice. The house takes a percentage of the winnings of each game. The minimum bet in any given game at the Midway Club was $5 on a single throw of the dice and the pot size varied greatly. The winner would pay to the house 2 and ½ percent of the amount he won, exclusive of his own bet. Mattucci testified that the Barbut game was the only source of his $38,000–$40,000 annual income.

Appellants assign ten claims of error in their appeal to this court.

## I. VENUE

■ . First, appellants claim that the trial court abused its discretion in denying their motion for a change of venue to Steubenville, Ohio. The case was in fact tried in Columbus, some 50 miles west of Steubenville. While Steubenville is the seat of court within the Eastern Division of the Southern District of Ohio, and the crime charged was alleged to have occurred there, both Steubenville and Columbus are located within the Southern District. We hold that the trial judge did not abuse his discretion in ordering trial at Columbus, particularly when the objection was made for the first time on the day assigned for trial, and immediately preceding the impanelling of the jury. Rule 22 of the Federal Rules of Criminal Procedure provides:

"A motion to transfer under these rules may be made at or before arraignment, or at such other time as the court or these rules prescribe."

The motion was, therefore, not timely, and the judge did not abuse his discretion in denying it. Cagnina v. United States, 223 F.2d 149 (5th Cir. 1955); United States v. Tremont, 351 F.2d 144 (6th Cir. 1965); United States v. McMaster, 343 F.2d 176 (6th Cir. 1965).

## II. PROSECUTORIAL REMARKS

■ Appellants claim that certain remarks made by the government attorney during his summation to the jury were inflammatory and incurably prejudicial to their rights. In closing argument, counsel for the government reviewed for the jury the testimony of the witnesses to the gambling operation at the Midway Club. He further stated that "I suppose we could have brought on twenty or thirty more." If the statement was improper at all, it was certainly harmless in the light of proofs which tended to show exactly that.

■ Objection was also made to the reference by government counsel in his final argument, to "A big gambling operation going on like this," and the statement that, "The pots must be pretty big to attract out-of-state gamblers", as well as similar comments. We conclude that while the government may have struck hard blows with such comments, they were not foul, Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and thus, did not violate defendants-appellants' right to a fair trial.

## III. SUFFICIENCY OF EVIDENCE UNDER SECTION 1955

Appellants claim that their motion for judgment of acquittal should have been granted because there was insufficient evidence to show the involvement of "five or more persons" within the meaning of 18 U.S.C. § 1955(b)(1)(ii).

The roles played by Mattucci, DeBellis, Betras and Barilla were clearly established at trial and were sufficient to bring them within the prohibition of the Act if the five person requirement were met. Mattucci was the owner of the business and the others worked as dealers. It is claimed, however, that the proved activities of appellant James Simone were insufficient as a matter of law to bring him within the statute as one of "five or more persons who conduct, finance, supervise, direct or own such [gambling] business".

The entrance to Midway Club was set up with a buzzer system and had a peephole in the door. Simone was a doorkeeper and guard, and was employed primarily to keep an eye on customers as they arrived and departed. He was paid $100 a week. Nick Contes, a Steubenville tavernowner who frequented the Club, testified that Simone would occasionally answer the door, "or, if somebody wanted a coke or hamburger, he would facilitate them". Contes further testified that a person who came to gamble or get a bite to eat could enter "as long as he was recognized, yes".

While at one point, Mattucci himself testified that he had given Simone orders to "let everybody in", he also stated that part of Simone's duties were "to keep out drunks, and to guard against a hold-up, because it would be three o'clock in the morning and we are off a beaten path. We are near a river bank". When cross-examined by Simone's counsel, Mattucci testified:

"QUESTION: Did he ever have authority of letting people into that club without checking with you first?

A. That's right. It was never up to him.

Q. Never up to him.

A. Never. He could never let nobody in."

■■ While the testimony was thus conflicting as to what Simone's exact role was, we are of the opinion that a jury question was presented as to whether his activities were such as to bring him within the statute as one who "conducts" an illegal gambling business. In United States v. Palmer, 465 F.2d 697, 699 (6th Cir. 1972), we recognized that Congress intended the word "conduct" to refer to both "high level bosses and street level employees". The Third Circuit has also broadly defined the term:

"The meaning seems perfectly clear to us. A street runner for a numbers business 'conducts' that business in the sense that he carries it on. Indeed without him it could not be car-

ried on. Before the gambling enterprise may be deemed of sufficient magnitude to warrant federal proscription it must be carried on by at least five people, including its street level employees, its managers and its owners. Its customers are excluded from the numerical count. All other participants are included. The statute is not vague." United States v. Riehl, 460 F.2d 454, 459 (3rd Cir. 1972)

Similarly, the Fifth Circuit, in a comprehensive opinion, reviewed the entire legislative history of the Act and concluded that the issue of whether the activities of a certain defendant brought him within the meaning of the Act, was properly submitted to the jury:

"Defendant Littlefield was a guard·or watchman for the business. His duty was to admit people to the club. However, he had no discretion as to who was to be admitted. He was on the premises at all times, lived there and used the premises for his domicile.

.    .    .    .    .    .

The thrust of appellants' argument is that Congress did not intend to include employees such as Littlefield . . . as 'persons who conduct, finance, manage, supervise, direct, or own all or part' of the gambling business and that mere employees cannot satisfy the necessary requirements. Appellants' contentions are not well taken." United States v. Harris, 460 F.2d 1041, 1049 (5th Cir. 1972)

We conclude, therefore, that there was sufficient evidence from which the jury could find that Simone was one who conducted the gambling business, and hence that the five person requirement of 18 U.S.C. § 1955(b)(1)(ii) was met. The trial judge properly denied defendant appellants' motion for judgment of acquittal.

## IV. JURY INSTRUCTIONS

■ Three of defendants-appellants' claims of error challenge the propriety of the judge's charge to the jury. On

review the issue is whether the instructions, taken as a whole, fairly and adequately submit the issues in the case to the jury. Gradsky v. Sperry Rand Corp., 489 F.2d 502 (6th Cir. 1972). Our examination of the entire charge as given satisfies us that it was complete, fair and free from error.

■ Appellants assert that the trial court misled the jury by defining the word "conduct" as a noun, whereas Section 1955 utilizes the term as a verb. The trial judge instructed the jury:

"The word 'conduct' as it is used in connection with the gambling business means and includes any action, function or duty performed or carried out by any person or persons which is necessary to the ordinary operation of such business."

While the form of the word used in the instruction was a noun, the correct meaning of the term as used in the statute was made clear in that instruction and throughout the charge. The jury could not have been misled or confused by this semantic distinction.

■ Appellants also claim that the trial judge erred in refusing to grant a requested charge submitted by defendants which employed the following language from United States v. Harris, supra:

"A mere employee who has no ownership in such business and who is also without power to conduct, finance, manage, supervise, or direct such business, could not be considered by you as one of the number of persons necessary to prove a violation of the federal statute under which these defendants are charged." United States v. Harris, 460 F.2d at 1049–1050.

We are of the opinion that the charge as a whole adequately instructed the jury as to the degree of defendants' participation required under the Act. Thus, it was unnecessary for the trial court to give, in addition, the negatively worded charge as requested by appellants.

■ Finally, appellants claim that the following instruction was an incorrect statement of the law:

"It is not necessary for the Government to prove that each and every defendant participated in the illegal gambling business for a period in excess of thirty days, but rather that the Government proved beyond a reasonable doubt that said business was in substantially continuous operation for a period in excess of thirty days, and that the defendants knowingly, willfully, and intentionally performed acts to conduct, finance, manage, supervise or direct said business."

We disagree. The statute, 18 U.S.C. § 1955(b)(1)(iii) clearly makes the thirty day requirement a part of the definition of illegal gambling business and not a specific requirement as to the duration of individual participation by persons involved in such business.

## V. OTHER ASSIGNMENTS OF ERROR

Appellants make four additional claims of error, all of which we find to be without merit.

■ After three of the defendants had rested their cases, the defendant Mattucci took the stand and testified in his own defense. The remaining defendants assert that his testimony was inadmissible as to them and that the jury ought to have been so instructed. The assertion is not well taken. If testimony is otherwise admissible, it is not rendered less so because the witness testifying was also a co-defendant or because it was offered as part of his own defense rather than as part of the government's case-in-chief. Appellants have confused the issue of admissibility of out-of-court statements of co-defendants with that which is given in open court and is thus subject to cross-examination. Cf. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ Appellants further claim that the trial court erred in permitting the

jury to consider certain sections of the Ohio Revised Code, as a basis for a federal offense.[3] The district court read to the jury the four provisions of Ohio law set forth in the indictment. Appellants particularly claim that no evidence was presented to establish that they had violated § 2915.06, which prohibits playing a game for money, because neither they nor the house actually wagered. We do not agree. The evidence established that the defendants were engaged in a business in which games were played for money and from which the business profited. This is enough. The evidence fully justified the court's instructions on all four sections of Ohio law.

Appellants' claim that the trial court erred in admitting Mattucci's payroll records is also without merit. We find that these records were properly admitted as business records under 28 U.S.C. § 1732. As to appellants' claim that the payroll summaries did not constitute the best evidence, we note that the record does not reflect an attempt on defendants' part to obtain or inspect more original records or that defendants were denied the right to cross-examine the accountant concerning the making and accuracy of the payroll documents. See U. S. v. Cummings, 468 F.2d 274 (5th Cir. 1972). In any event, the evidence was primarily cumulative and we find no prejudice from its admission.

Finally, appellants claim that they were not given fair warning of the illegality of their business, and therefore, the government ought to have been estopped from indicting and prosecuting them. In support of that contention, appellants introduced proof that they had previously sought advice from government agents concerning the legality of the Barbut game. No claim is made that the government agents entrapped defendants, or even that they erroneously advised defendants that their conduct was legal. The claim is that they *failed* to advise defendants of the illegality of the Barbut game under

§ 1955. The responsibility for determining what conduct shall be illegal under federal law rests with Congress, and Congress bears the burden of doing so with definiteness. United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L. Ed. 989 (1954). Thus, Title 18 U.S.C. § 1955 itself provided defendants with the fair warning to which due process entitled them, and no additional burden lay with the government to protect appellants from prosecution under a valid law.

Affirmed.