**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard DENTON, Gay E. Powers and Ray E. Powers, Defendants-Appellants.**

**No. 76–2693.**

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1977.

Decided June 21, 1977.

ing them with conspiracy to conduct and with conducting an illegal gambling operation, in violation of 18 U.S.C. §§ 1955 and 371.[1] Denton was sentenced on the substantive offense charged in Count II to eight days in jail, three years probation, and $1800 fine. Gay Powers and Ray Powers, who are brothers, were each sentenced on the substantive offense charged in Count II to four days in jail, three years probation, and $1200 fine. The sentence of each appellant on his conspiracy conviction on Count I was suspended, and each was placed on three years probation. The sentences on the two counts were to run concurrently.

Appellants have raised three questions: *One,* whether the trial judge abused his discretion in admitting into evidence as summaries, composite tape recordings of representative telephone conversations intercepted pursuant to court order and made from duplicate tapes of the original tape recordings which were procured under the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, and as amended in 1970, 18 U.S.C. §§ 2510–2520; *Two,* whether the trial judge properly instructed the jury on the elements of the offense under 18 U.S.C. § 1955; and *Three,* whether the Government established the jurisdictional requirements under 18 U.S.C. § 1955.[2] We affirm appellants' convictions.

Charles A. Palmer, Lansing, Mich., for defendants-appellants.

Frank S. Spies, U. S. Atty., Grand Rapids, Mich., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

WEICK, Circuit Judge.

Appellants have appealed from judgments of conviction by a jury and from sentences on a two-count indictment charg-

---

1. Ray Powers was also convicted on two counts: the illegal use of interstate wire communications to transmit bets and wagers (Count I) and transmitting information to assist the same (Count II), in violation of 18 U.S.C. § 1084(a). Gay Powers also was convicted on Count I for violating 18 U.S.C. § 1084(a). Neither of these convictions is involved in this appeal; however, their sentences on these convictions have been deferred until the outcome of their appeals in the present case.

2. 18 U.S.C. §§ 1955(a) and (b) provide:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

## I

On November 22, 1974 the District Court authorized Special Agents of the FBI to intercept the telephonic communications of the Powers brothers and two other persons and to make pen-register recordings of the numbers dialed. The Special Agents proceeded forthwith to tap and to record the conversations of the telephone calls from the suspects' telephone lines. The wiretaps were authorized for twenty days from November 23, 1974 to December 12, 1974. The Agents also received court authorization for three more days of telephone interceptions in January, 1975.

The Agents did not monitor private personal calls on the interceptions, and they made pretext calls to ensure that the interceptive devices were installed properly on the correct telephone lines. The Agents also made five-day reports to the court on the progress of the investigation.

At the end of each day of the interceptions the Agents made copies of the taped communications and turned over the original tapes to FBI Special Agent Van Harp. Agent Harp put the originals in a safe and sealed them on December 13, 1974. On December 16, 1974 FBI Special Agent Norman Simon delivered the sealed tapes to the Court. The original tapes remained sealed until the seal was broken at the trial.

Agent Harp instructed the agents in making a composite tape and verbatim transcripts of the intercepted conversations from the duplicate tapes. The composite tape consisted of about 39 telephone calls [3] between the appellants and other persons which illustrated the bookmaking operation under investigation. Approximately 963 telephone calls were monitored during the investigation. The composite tape showed the betting operations of the appellants and the involvement of persons such as Maurice Ramont and Harry DeRose in the operation from November 26, 1974 to December 12, 1974.

At the trial before a jury Special Agent William Holmes of the FBI testified as a government expert on gambling. Agent Holmes had heard the composite tape, had read the verbatim transcript of the tape, and had examined the items seized from searches made on January 13, 1975. He testified from this evidence that a bookmaking operation, consisting of at least nine participants, was in existence from November 23, 1974 to January 13, 1975. He stated that five of these participants were the Powers brothers, Denton, Harry DeRose and Maurice Ramont. Agent Holmes said that the Powers brothers were the managers or partners in this gambling organization; that Richard Denton was an employee of the organization who accepted bets, disseminated information to customers and informed the customers of the amounts owed to or by the bookmaker; that Harry DeRose was a "writer" for the organization; that Maurice Ramont was a bookmaker who placed wagers with and accepted wagers from Denton; and that most of there wagers were layoff wagers.[4]

From the composite tape Agent Holmes testified that the organization took in a minimum of the following amounts of money on the following dates:

| November | 25, | 1974 | $800 |
|----------|-----|------|------|
| November | 26, | 1974 | 120 |
| November | 27, | 1974 | 900 |
| November | 29, | 1974 | 1,500 |
| November | 30, | 1974 | 2,100 |
| December | 2, | 1974 | 800 |
| December | 6, | 1974 | 1,130 |
| December | 7, | 1974 | 1,900 |

After Agent Holmes had examined the yellow spiral notebook taken from Denton's office pursuant to a January 13, 1975 search, Agent Holmes testified that the organization took in $6,425 on January 12, 1975. He attributed this large intake from

---

**3.** About seven telephone calls involving the § 1084(a) offenses were also included as part of the composite tape.

**4.** Agent Holmes defined a layoff wager as a "rebetting of wagers from one bookmaker to another" in order to balance one bookmaker's book, *i. e.* one bookmaker "takes the excess that he feels he cannot handle and bets it with another bookmaker."

the betting on the Super Bowl football game.

The composite tape and all of the original tape recordings were admitted into evidence at the trial.

## II

Appellants' principal argument is that all of the original tapes of the intercepted telephone conversations, rather than the composite tape made from the duplicate copies, should have been played at the trial, pursuant to 18 U.S.C. §§ 2510–2520. They contend that the admission of the composite tape into evidence was reversible error. We disagree.

Counsel for appellants objected to the admission of the composite tape in evidence on the ground that it was made up of elements of other tapes and had been edited in order to make it composite. Counsel stated, "I feel that the original tape is the one that should be used and not the edited one." The ruling on the objection was as follows:

The Court: Mr. Brooks, the rules of evidence provide that in a case where there is lengthy and investigative documentary or oral or recorded testimony, that it is within the discretion of the Court to permit excerpts to be used. I think that is Federal Rule 1006, 28 U.S. Code.[5] And looking from the size of the original tapes that are here, I think we'd be here for three weeks if we listened to the originals entirely, knowing full well there is material in those tapes that has no bearing on this case.

Overrule your objection and permit the excerpted parts to be used. [Footnote added.]

In *United States v. DiMuro*, 540 F.2d 503 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977), the Court held at page 512:

The admissibility of recordings of intercepted conversations or parts thereof is a matter committed to the sound discretion of the trial court.[14]  *Gorin v. United*

[14] Although only the composite tape was played for the jury, all the recorded conversations were received in evidence. And appellants were afforded the opportunity to examine the original tapes of all the intercepted conversations.

*States*, 313 F.2d 641, 652 (1st Cir. 1963); *Todisco v. United States*, 298 F.2d 208, 211 (9th Cir. 1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 602, 7 L.Ed.2d 527 (1962). And the use of a composite trial tape of particular intercepted conversations which the government considered relevant to the trial has been permitted. *See, e. g., United States v. Lawson*, 347 F.Supp. 144, 147–49 (E.D.Pa.1972).

In *United States v. Whitaker*, 372 F.Supp. 154, 164 (M.D.Pa.), *aff'd without published opinion*, 503 F.2d 1400 (3d Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 789, 42 L.Ed.2d 810 (1975), the District Court ruled that it was proper to admit into evidence and to play at trial a summary tape of selected conversations ("master tape") of original recordings of FBI interceptions of telephone conversations when the summary tape was authentic, accurate, and would conserve time at trial by its use.

Similarly, the Court of Appeals of New York in *People v. Nicoletti*, 34 N.Y.2d 249, 253–54, 356 N.Y.S.2d 855, 858, 313 N.E.2d 336, 339 (1974), cognizant of 18 U.S.C. § 2518(8)(a), specifically approved re-recording the original tapes of intercepted telephone conversations in order that the duplicate recordings be used "for the purposes of transcription and preparation of composite

---

**5.** Rule 1006 Fed.R.Evid. provides:

Summaries. The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Rule 1003 Fed.R.Evid. provides:

Admissibility of Duplicates. A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

No genuine question as to authenticity was raised and no unfairness was shown.

recordings" as "prudence alone dictates that such tasks be done with duplicate not original recordings" to avoid damage to the original recordings. *See also United States v. Ricco,* 421 F.Supp. 401, 408–09 (S.D.N.Y. 1976), and *People v. Sher,* 38 N.Y.2d 600, 604–05, 381 N.Y.S.2d 843, 345 N.E.2d 314 (1976).

In *United States v. Scully,* 546 F.2d 255, 270 (9th Cir. 1976), *judgment vacated on other grounds, sub nom. United States v. Cabral,* 430 U.S. 902, 97 S.Ct. 1168, 51 L.Ed.2d 578 (1977), the Court approved the introduction into evidence of a single master tape of all the intercepted conversations. The Court said:

The procedure saved considerable time by eliminating the need to switch tape reels continually. The master tape had quality equal to the originals. The defendants had opportunity to examine the originals.[6] [Footnote added]

The docket entries in the District Court reveal that on September 25, 1975 there was a pretrial conference of the attorneys meeting with the United States Attorney, before the District Court, to hear tapes and to obtain transcripts. They were to report back to the Court by the end of October.

There is no claim made by appellants that this did not occur. Thus appellants' counsel had ample opportunity over a long period of time to listen to all of the tapes if he cared to do so. At the trial he had full opportunity to cross-examine the Special Agents of the FBI with respect to the composite tape and to offer proof if he contended that the tape was improperly prepared. He was given further opportunity to make a comparison at the trial.

■ Thus, the requirement of Rule 1006 providing defense counsel a "reasonable time and place" to examine the tapes in question was complied with by the Government. Further, the prosecution laid the proper foundation on the accuracy and au-

thenticity of the composite tape for its admission into evidence. Moreover, the use of the composite tape at trial saved the Court much time and inconvenience. *United States v. Scully, supra* ; and *United States v. DiMuro, supra* at 512–13.

Appellants offered no proof questioning the accuracy or authenticity of the composite tape.

■ We are of the opinion that the District Court did not abuse his discretion in admitting the summaries in evidence.

■ Finally, we do not see any error in Agent Harp's preparation of the composite tape for the prosecution. Fed.R.Evid. 1006. In the cases discussed above the prosecution in each case prepared the composite tapes for trial. Furthermore, the Government, in the present case, laid a proper foundation for the introduction of the composite tape through the testimony of the agents who prepared the composite tape. See 5 Weinstein's Evidence, ¶ 1006[06] (1975). Defense counsel had adequate opportunity to cross-examine the agents as to any lack of authenticity or accuracy in the composition, preparation, and presentation of the composite tape. In fact, the trial judge noted to appellants' counsel that "the jury will understand this is a Government-chosen excerpt, and is to be viewed as such." *Compare United States v. Lawson,* 347 F.Supp. 144, 149 (E.D.Pa.1972).

■ We are further of the opinion that in the procuring, sealing, and safe keeping of the original tapes the statute, Sections 2510 *et seq.,* was strictly complied with, and we find no violation of the statute in the preparation of the summaries and their admission in evidence.

### III

Appellants also argue that the Court erred in instructing the jury as to the elements of the § 1955 offense. They contend

---

**6.** Apparently the master tape was used in the *Scully* case to increase the clarity of the original tapes. Such a procedure has been approved in other cases. See *United States v. Madda,* 345 F.2d 400, 402–03 (7th Cir. 1965); *United States v. Hall,* 342 F.2d 849, 852–53 (4th Cir.), *cert. denied,* 382 U.S. 812 (1965); and *Johns v. United States,* 323 F.2d 421 (5th Cir. 1963).

that the instructions did not distinguish between "mere bettors" and those persons who were actually involved in the gambling business, and that the instructions on the jurisdictional requirements of § 1955 were incorrect as a matter of law. We disagree.

■ Defense counsel neither presented to the trial judge alternative jury instructions, nor objected to the jury instructions as given. Therefore, appellants are not now in a position to object, Fed.R.Crim.P. 30, unless the instructions are so manifestly prejudicial as to lead to a miscarriage of justice. We do not find them so to be. Fed.R.Crim.P. 52(b). *United States v. Faulkner*, 538 F.2d 724, 728 (6th Cir.), *cert. denied*, 429 U.S. 1023, 97 S.Ct. 640, 50 L.Ed.2d 624 (1976); and *United States v. Vigi*, 515 F.2d 290, 293 (6th Cir.), *cert. denied*, 423 U.S. 912, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).

■ The instructions as a whole given by the trial judge to the jury correctly instructed the jurors as to the elements of the offense. Many of the contested instructions were taken from instructions previously approved by this Court in *United States v. Mattucci*, 502 F.2d 883, 889 (6th Cir. 1974). Thus, plain error was not present.

### IV

Appellants further contend that there was insufficient evidence to prove the jurisdictional requirements under § 1955(b). They argue that the evidence, viewed most favorably to the Government, does not show that five or more persons were involved in the gambling operation for at least thirty days from November 23, 1974 to January 12, 1975; and that evidence was lacking of any activity by the three appellants and two other persons between December 12, 1974 and January 12, 1975, the interim period in which no wiretaps were authorized.

Also, they argue that the evidence does not show that the organization actually accumulated bets of $2100 on November 30, 1974, or that five persons were still involved in the organization when Denton grossed $6,425 on January 12, 1975. The Government, on the other hand, contends that Special Agent Holmes' testimony alone was sufficient to sustain the conviction.

■ The record shows that appellants' defense counsel at trial moved for judgment of acquittal at the close of the Government's case, which was denied, but that he failed to renew this motion at the conclusion of all the evidence, after appellants presented evidence on their own behalf. The only witness to testify for the defense was Denton, and his testimony was also admissible as to the Powers brothers. *United States v. Mattucci*, 502 F.2d 883, 889 (6th Cir. 1974).

■ Therefore, appellants waived any objection to the trial court's denial of their motion at the close of the Government's case, and "the issue of sufficiency of the evidence can only be relied upon here under the 'plain error' provision of Rule 52(b), Fed.R.Crim.P." *United States v. Swainson*, 548 F.2d 657, 662–63 (6th Cir.), *cert. denied*, —— U.S. ——, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977). *See also United States v. Black*, 525 F.2d 668, 669 (6th Cir. 1975).

■ From our examination of the record, plain error was not present. The jurors had the verbatim transcripts of the composite tape and could weigh for themselves the strength of Agent Holmes' testimony as to whether the gambling business had gross receipts of more than $2,000 in a single day. In one telephone call alone, on November 30, 1974, Richard Denton said to Ray Powers that they had *made* about "two grand or a little more" on bets in horse racing. Thus, in the view most favorable to the Government the evidence was sufficient to support the jurisdictional requirements of § 1955(b).

The judgments of conviction are affirmed.