**UNITED STATES OF AMERICA,**
**Plaintiff–Appellee,**

v.

**Dawn COOK; Stokes Cook; Terry Bridgeman, Defendant–Appellant.**

Nos. 99–6283, 99–6285, 99–6354.

United States Court of Appeals, Sixth Circuit.

July 2, 2001.

Before NORRIS and COLE, Circuit Judges; and STEEH, District Judge.*

* The Honorable George Caram Steeh, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

## OPINION

COLE, Circuit Judge.

Before this Court are the consolidated appeals of three defendants that were indicted and convicted of various federal narcotics violations for their participation in a multi-member drug conspiracy in eastern Tennessee. Defendant–Appellant Dawn Cook appeals from the sentence imposed following her guilty plea to conspiracy to distribute cocaine. Defendant–Appellant Stokes Cook ("Stokes Cook" or "Cook") appeals from his jury convictions and sentences for one count of conspiracy to possess with the intent to distribute cocaine and two counts of aiding and abetting the distribution of cocaine hydrochloride. Defendant–Appellant Terry Bridgeman appeals from his jury convictions and sentences for one count of conspiracy to possess with the intent to distribute cocaine hydrochloride and one count of distribution of cocaine hydrochloride.

Dawn Cook assigns error to the district court's determination, for purposes of sentencing, that she was responsible for distributing at least 3.5 but less than 5 kilograms of cocaine, instead of the 1.8 kilograms of cocaine that she argues was supported by the evidence. Because the district court failed to make sufficiently individualized findings concerning the extent to which Dawn Cook facilitated other drug transactions, we VACATE her sentence and REMAND for resentencing.

Stokes Cook raises challenges of: (1) the sufficiency of the evidence presented in support of the jury's guilty finding on each count of conviction; (2) the district court's admission into evidence of his co-conspirators' hearsay statements; (3) the district court's clearly erroneous determination of the drug quantity attributable to him over the course of the conspiracy; (4) the district court's plainly erroneous application of a four-level aggravating role enhance-

ment; (5) the district court's adoption of the probation officer's incorrect determination of his criminal history; and (6) the district court's sentence of him in excess of the maximum statutory penalty, in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We AFFIRM the district court on all issues.

Terry Bridgeman assigns error to the district court's admission into evidence, over his objection, of an out-of-court statement by co-conspirator Dawn Cook that he had previously sold cocaine to another co-conspirator. Because the district court properly admitted Dawn Cook's statement pursuant to FED.R.EVID. 801(d)(2)(e) as a statement of a co-conspirator during the course and in furtherance of the conspiracy, we AFFIRM the district court on this point.

## I. BACKGROUND

The Tennessee Bureau of Investigation ("TBI") began an investigation in August 1997 of the cocaine-distribution activities of Acie Mullins. Evidence presented at trial revealed that from June 1996 until July 22, 1998, Mullins collected money from investors, traveled to New York and Florida to purchase cocaine, and returned to the Eastern District of Tennessee to distribute it. One investor, Stokes Cook, purchased cocaine from Mullins during this period and then, with the assistance of his wife, Carol Cook, and his daughter, Dawn Cook, sold it to interested buyers. Mullins and Stokes Cook bought cocaine from each other on several occasions until their arrests in 1998. Also involved in this scheme were Terry Bridgeman and a number of other co-conspirators, many of whom were, like Stokes Cook, members of the Ghost Riders Motorcycle Club.

On August 5, 1998, a grand jury in the Eastern District of Tennessee named Dawn Cook, Stokes Cook, Terry Bridgeman, and three other individuals in a thirteen-count indictment charging various violations of federal narcotics laws, including conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846, and distribution of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1). Dawn Cook entered a plea of guilty to Count One of the indictment (conspiracy to distribute cocaine) on February 22, 1999. Stokes Cook and Terry Bridgeman proceeded to trial on March 4, 1999. A jury convicted them on March 9, 1999.

Stokes Cook, Dawn Cook, and Terry Bridgeman each filed objections to their respective presentence investigation reports ("PSI"), which were resolved by the district court in an August 23, 1999, order. The district court sentenced Dawn Cook to eighty-seven months' imprisonment, but, on the motion of the Government, subsequently reduced her term of imprisonment to forty-four months. The district court sentenced Stokes Cook to 324 months' imprisonment and Terry Bridgeman to twenty-seven months' imprisonment. Their timely appeals followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

#### 1. Standard of Review

We review a challenge to the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A defendant making such a claim bears "a very heavy burden,"

*United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986), as "all evidence must be construed in a manner most favorable to the government," *United States v. Green,* 548 F.2d 1261, 1266 (6th Cir.1977). This is particularly so since "once a conspiracy has been proven, only slight evidence is necessary to implicate a defendant as a participant in that conspiracy if the evidence shows the connection beyond a reasonable doubt." *United States v. Braggs,* 23 F.3d 1047, 1051 (6th Cir.1994).

#### 2. Analysis

■ Stokes Cook challenges the sufficiency of the evidence underlying his convictions. He argues that because the Government established at trial only that he shares a familial relationship with his daughter Dawn Cook and that he had a buyer-seller relationship with Mullins, the jury's guilty verdict as to the conspiracy count cannot stand. He further argues that the jury's guilty verdict as to the aiding-and-abetting count also lacks sufficient support, because the Government failed to show both that Stokes Cook knew that the other co-conspirators possessed cocaine with the intent to distribute it and that any drug sales by Stokes Cook to Mullins, Mosier, or Dawn Cook—all of whom are known drug users—were not intended for their personal use. Neither argument has merit.

Before the jury was abundant evidence provided by Cook's co-conspirators (beyond that establishing a familial relationship between Stokes Cook and Dawn Cook) on which it could have reasonably found Stokes Cook guilty of both counts. Co-defendant Mullins testified that he and Cook were engaged in the distribution of cocaine, and that, for a period of time, they sold cocaine to each other. Co-defendant David Cross and confidential informant Charles Mosier both testified that they

observed an initial meeting between Cook and Mullins, the purpose of which, according to Mullins, was to arrange a cocaine purchase in Florida.

The jury also had before it the testimony of various federal and local law enforcement agents establishing the guilt of Stokes Cook. TBI Special Agent Jim Williams testified that he acted in an undercover capacity to infiltrate the drug distribution ring; that Mullins told him that his supplier was a member of the Ghost Riders Motorcycle Club; and that, on another occasion, he overheard a cell phone conversation between Mullins and Cook discussing the arrangements for a cocaine deal. TBI Special Agent Mike Taylor and Kingsport, Tennessee, police detective Brian Bishop testified that their surveillance of Williams revealed that Stokes Cook was likely involved in at least two drug transactions with Mullins. Finally, undercover TBI Special Agent Ken Rhodes testified that over a period of time he made several cocaine purchases from Dawn Cook. During one or more of these transactions, Dawn Cook indicated that her father purchased cocaine and then supplied her with a portion of it to distribute; Dawn Cook's statement was confirmed by several audio-recorded conversations involving Dawn Cook, Mosier, and Rhodes, all of which were played at trial.

On the basis of the foregoing evidence, and viewing it in the light most favorable to the Government, we conclude that any rational factfinder could have found the essential elements of the charged offenses beyond a reasonable doubt. Stokes Cook's argument therefore must fail.

### B. Co–Conspirator Hearsay Statements

#### 1. Standard of Review

We review for an abuse of discretion a district court's ruling on whether certain evidence constitutes hearsay. *See Trepel*

*v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir.1999) ("[I]n disregard of our heretofore well-settled precedent that hearsay evidentiary rulings are reviewed *de novo*, we shall [in accordance with the U.S. Supreme Court's holding in *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ] review the district court's ruling for an abuse of discretion.").

#### 2. Analysis

##### a. Terry Bridgeman

■ Hearsay evidence may be admitted pursuant to FED.R.EVID. 801(d)(2)(e) where the hearsay proponent demonstrates by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the hearsay is offered was a member of the conspiracy, and that the hearsay statement was made in the course and in furtherance of the conspiracy. *See United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979). Pursuant to this exception, the district court permitted the admission of evidence that Dawn Cook, in response to an inquiry made by confidential informant Mosier, identified Bridgeman as an individual who had previously sold cocaine to co-conspirator Acie Mullins. Specifically, Special Agent Rhodes testified that on one occasion, when he and Mosier went to Dawn Cook's home to purchase cocaine, Dawn Cook and Mosier began to talk about Bridgeman: "Mr. Mosier asked how much Terry Bridgeman charged Acie for an ounce, and she said 800." Bridgeman argues that admission of this testimony at trial was improper, because his alleged statement was not in furtherance of the conspiracy.

We disagree. Although Bridgeman urges a narrower construction of "in furtherance of the conspiracy," we have previously declined to so hold. *See United*

*States v. Monus,* 128 F.3d 376, 392–93 (6th Cir.1997) (noting that "statements which prompt a listener to act in a manner that facilitates the carrying out of the conspiracy" or "identify participants and their roles in the conspiracy" are properly considered statements "in furtherance of the conspiracy" and admissible under 801(d)(2) (citations and internal quotation marks omitted)). Because, at a minimum, Dawn Cook's statement was an identification of a participant of the conspiracy (Bridgeman) and his role in that conspiracy (selling drugs to interested buyers), Bridgeman's claim must fail.[1]

### b.   Stokes Cook

■ Stokes Cook argues that the district court erroneously permitted Special Agent Williams to testify about statements allegedly made to Williams by Mullins concerning Mullins's cocaine supplier, who was a member of the Ghost Riders Motorcycle Club (of which Stokes Cook is a member). He also challenges the district court's admission of Mosier's testimony that Dawn Cook, while selling cocaine to him, stated that Stokes Cook was the supplier of her cocaine and the individual who controlled its price, distribution, and delivery. Cook's claims are without merit. Williams's testimony was properly admitted because Williams was merely relating a conversation with an unindicted co-conspirator whose statement was made during an act of the conspiracy (a drug sale by Mullins to Williams) in furtherance of the conspiracy (to ensure Williams' continued purchases by assuring him that the cocaine was of high quality because it was provided by the Ghost Riders). Similarly, Mosier's testimony concerning his conversations with Dawn Cook (and the audiotapes

memorializing the same) were properly admitted, because they involved statements by a co-conspirator, were made during the course of the conspiracy, and were in furtherance of the conspiracy (by assuring Mosier that she had access to a continuous supply of inexpensive cocaine).

■ Some of the alleged conversations between Mosier and Dawn Cook were captured on audiotapes, which were admitted at trial. Stokes Cook contends that the district court's admission of these audiotapes was error, both because only excerpted portions were admitted, and because they contained hearsay statements concerning him. Although Cook filed a continuing objection to the Government's use of hearsay statements in its case-in-chief, he did not raise a specific objection to the Government's use only of excerpted portions, and thus we review this claim for plain error. *See United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998). There is no question that the Government laid a proper foundation for introduction of the excerpts, eliciting testimony from Special Agent Rhodes that he was a party to the taped conversations, that the conversations accurately described the events discussed therein, that he recognized the voices on the recordings, and that he had used the original tapes to create the tapes containing the excerpts. The Government also met its burden under FED.R.EVID. 1006 by allowing Cook an opportunity to review the unaltered audiotapes. Thus, we do not believe it was plain error for the district court to allow use of audiotape excerpts. *See United States v. Denton,* 556 F.2d 811, 816 (6th Cir.1977) (noting that admission of a composite tape of several recordings was appropriate because defense counsel had previously had an op-

---

1.   For similar reasons, we cannot conclude that the district court erred when it permitted admission of hearsay statements of Dawn Cook in which she referred to her supplier as "Daddy."

portunity to review the tapes in question and because the Government had laid a proper foundation establishing the tapes' accuracy).

■ Stokes Cook's final challenge concerns the district court's decision to permit the Government to introduce testimony, subject to its later demonstration that a conspiracy existed. Having previously recognized that employment of such a procedure may be appropriate, we disagree. See Vinson, 606 F.2d at 153.

### C. Jury Instructions

#### 1. Standard of Review

When reviewing a jury instruction to which a defendant failed to object at trial, such as the one at issue here, we review only for plain error, which requires us to determine "whether the instructions, when taken as a whole, were so clearly wrong as to produce a grave miscarriage of justice." United States v. Sanderson, 966 F.2d 184, 187 (6th Cir.1992) (citation omitted).

#### 2. Analysis

■ Stokes Cook argues that the district court erred when it failed to give a so-called "buyer-seller instruction" to the jury. Such an instruction would have permitted the jury to consider that the cocaine in Cook's possession was for his own personal consumption, and not for the purpose of sale or distribution in a drug conspiracy; that is, the fact that there was an established buyer-seller relationship, without more, did not constitute a conspiracy. We reject Cook's argument. A buyer-seller instruction is unnecessary "if the judge has given a complete instruction reciting all the elements of conspiracy and requirements for membership in a conspiracy." Riggs v. United States, 209 F.3d 828, 833 (6th Cir.2000). Only in the absence of such a "complete instruction" is a defen-

dant entitled to a buyer-seller instruction. See id. Because the district court in the instant case provided a sufficient conspiracy instruction, no buyer-seller instruction was required. Thus, Cook cannot demonstrate that the entire set of jury instructions produced a miscarriage of justice.

### D. Sentencing–Related Errors

#### 1. Standard of Review

A district court's application of the facts to the Sentencing Guidelines is a mixed question of law and fact that we review de novo. See Razavi v. Commissioner, 74 F.3d 125, 127 (6th Cir.1996). We review for clear error a district court's factual findings concerning the quantity of narcotics for which a defendant is to be held criminally responsible. See United States v. Meacham, 27 F.3d 214, 216 (6th Cir. 1994). Similarly, we will disturb a district court's determination of a defendant's role in the offense only for clear error. See United States v. Walker, 160 F.3d 1078, 1091 (6th Cir.1998). A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." United States v. Gort–DiDonato, 109 F.3d 318, 320 (6th Cir.1997) (citation and internal quotation marks omitted). In the context of an alleged Apprendi violation, where there has been no objection to a district court's determination of drug quantities, such as in the instant case, we review for plain error. See United States v. Page, 232 F.3d 536, 543 (6th Cir.2000).

#### 2. Analysis

##### a. Drug Attribution

###### i. Dawn Cook

The district court in its August 23, 1999, order ruling on Dawn Cook's objections to the PSI, made the following findings:

DEA Special Agent Mike Steadman testified that, to the best of his knowledge, Ms. [Dawn] Cook was distributing approximately two ounces of cocaine per week. She also facilitated other transactions and relayed communications between Stokes Cook and other buyers. This extends the scope of her agreement in the conspiracy to at least 3.5 but less than 5 kilograms of cocaine.

In making such findings, the district court rejected the probation officer's recommendation that she should be held responsible for distribution of at least five, but less than fifteen, kilograms of cocaine.

Dawn Cook now argues that the district court's findings lacked factual support and should be set aside. She asserts that she should have been held responsible for a total drug quantity of 1.8 kilograms, which would have yielded a scoring level of twenty-six prior to any offense-level adjustments. In support of her argument, she points to evidence adduced at trial—which the district court apparently adopted, as evidenced by the language of its order— that she distributed two ounces of cocaine per week for the duration of her six-month participation in the conspiracy (from November 1997 until April 1998).[2] While she recognizes that the district court attributed to her not only cocaine that she distributed but also cocaine-distribution transactions that she facilitated, she nevertheless contends that the district court failed to make the requisite individualized factual findings concerning her involvement in the facilitation of other drug transactions to warrant its departure from the 1.8 kilograms calculation that she suggests the evidence supported. While Dawn Cook never explains how she arrived at 1.8

kilograms as the proper amount of drugs attributable to her, we agree that the district court failed to provide proper support for its findings.

Findings on which a defendant's sentence is based, including the district court's relevant conduct approximation, need only be supported by a preponderance of the evidence. *See United States v. Walton*, 908 F.2d 1289, 1301 (6th Cir.1990). Although a sentencing court must consider "those quantities of drugs not specified in the counts of conviction that are 'part of the same course of conduct or common scheme or plan,'" U.S. Sentencing Guidelines Manual [hereinafter "U.S.S.G." or "Guidelines"] § 1B1.3(a)(2), the court is urged, where the amount is uncertain, "to err on the side of caution and only hold the defendant responsible for that quantity of drugs for which the defendant is more likely than not *actually* responsible," *Meacham*, 27 F.3d at 216 (citations and internal quotation marks omitted). We also note that the defendant need not be personally or directly responsible for sale of the amount attributed to her: "The Sentencing Guidelines provide that the defendant's relevant conduct, in the case of a jointly undertaken criminal activity, includes 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity' that occurred during the commission of the offense of conviction." *United States v. Hernandez*, 227 F.3d 686, 698 (6th Cir. 2000).

The Government argues that the district court's findings relied upon the collective testimony of co-defendant Mullins, Special Agents Williams and Rhodes, and confidential informant Mosier, which demon-

---

**2.** Although Dawn Cook suggests that she participated in the conspiracy only from November 1997 until April 1998, the factual proffer submitted by her in connection with her plea agreement states that her involvement began "[d]uring approximately the month of June, 1996, and continu[ed] to on or about July 22, 1998."

strated that "Cook distributed two to three kilograms of cocaine per month for a period of about nine months .... [and] that Dawn Cook was distributing at least two ounces of cocaine per week during the same period." Taking the Government at its word, then, Dawn Cook would have distributed approximately eighty ounces of cocaine during this nine-month period (assuming she distributed two ounces each week for forty weeks), which would amount to roughly 2.27 kilograms. *See* U.S.S.G. § 2D1.1, cmt. n. 10 (1998) (setting forth applicable measurement conversion table). While we note that it is certainly possible, and perhaps even likely, that Dawn Cook facilitated the distribution of an additional 1.23 kilograms to warrant the district court's conclusion that she was criminally responsible for distribution of at least 3.5 kilograms, we simply do not (and cannot) know, however, since the district court failed to provide a more complete explanation of its findings. Accordingly, we VACATE Dawn Cook's sentence and REMAND for resentencing.

### ii. Stokes Cook ·

█ The drug attribution issue raised by Stokes Cook is more easily resolved, and we find that the district court adequately supported its findings. We are obligated to sustain the district court's finding if, upon review of the entire record, we conclude that "it was supported by 'some minimum indicium of reliability beyond mere allegation.'" *Hernandez*, 227 F.3d at 699. We believe that it was. It is evident to us that the district court erred on the side of caution in rejecting the PSI's recommendation of sixteen to twenty-four kilograms. The district court apparently credited Daniel Brummit's statement (as related by Agent Steadman) that Stokes Cook was supplied with five ounces per week, and concluded, as we do, that Stokes Cook received a weekly supply of

five ounces of cocaine for the duration of the alleged conspiracy (June 1996 until July 22, 1998, according to the indictment). The district court properly rejected Dawn Cook's estimate that her father sold one kilogram of cocaine every two to three weeks, noting that no witness had corroborated Dawn Cook's testimony, that Stokes Cook was never found to be in possession of such an amount, and that his documented drug-selling transactions involved "relatively small quantities." Thus, relying only on Agent Steadman's testimony that Stokes Cook sold (or was supplied with) five ounces of cocaine per week from June 1996 to July 22 1998, then on that basis alone, we could determine, as the district court apparently did, that Stokes Cook received, with the intent to distribute, a total of 555 ounces (assuming five ounces were sold over a 111–week period) or 15.7 kilograms, an amount slightly higher than the district court's finding. We thus find no error in the district court's attribution to Cook of five to fifteen kilograms of cocaine.

### b. Aggravating Role Enhancement

█ A four-level, aggravating role (or role-in-the-offense) sentencing enhancement is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Proper application of the enhancement requires a showing that the defendant was "the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, cmt. n. 2 (1998); *United States v. Munoz*, 233 F.3d 410, 416 (6th Cir.2000). In recommending the enhancement, the probation officer who prepared Stokes Cook's PSI made the following findings:

> [Stokes Cook] was a leader in the drug conspiracy that involved Carol Cook,

Dawn Cook, Terry Bridgeman, David Cross, Alejandro Romero, Acie Mullins, Charles "Tiny" Mosier, as well as an additional confidential informant. Evidence reflects that the defendant made decisions on what to charge for the drugs, whom to sell to and how much to sell. He also made numerous trips to Myrtle Beach, South Carolina, and North Wilkesboro, North Carolina, to pick up large amounts of cocaine. Therefore, the base offense level is increased by four levels.

Stokes Cook argues that the district court erred in applying this enhancement, because the Government failed to prove any of the following: (1) that the conspiracy consisted of at least five participants, as only four people were convicted (Stokes Cook, Carol Cook, Dawn Cook, and Acie Mullins), and Mosier, as an undercover informant, was not a criminally responsible participant in the conspiracy; (2) that he organized or led at least five people; or (3) that he controlled the method by which the purchaser sold the cocaine or otherwise controlled the distribution channels, as is required by *United States v. Patrick*, 965 F.2d 1390, 1396 (6th Cir.1992). Because Stokes Cook failed to raise this objection before the district court, we may review this claim only for plain error.[3]

As a threshold matter, we note that the Guidelines do not require that the alleged organizer have managed or supervised at least five people. *See* U.S.S.G. § 3B1.1, cmt. n. 2 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of *one or more* other partici-

pants." (emphasis added)). Neither do the Guidelines set forth a requirement that only convicted conspirators may be counted to establish that a defendant is properly subject to an aggravating role enhancement. To the contrary, the Guidelines expressly include criminally responsible participants, regardless of whether they have themselves been convicted. *See* U.S.S.G. § 3B1.1, cmt. n. 1.

Our review of the record suggests that the Government did establish that the alleged conspiracy consisted of at least five participants. Stokes Cook, Dawn Cook, and Terry Bridgeman were convicted participants. David Cross and Alex Romero were also participants; although neither of them was ultimately convicted, the district court could have reasonably concluded by a preponderance of the evidence that they were criminally responsible. The district court, therefore, did not clearly err in concluding that the conspiracy consisted of at least five participants.

Cook's position that the Government failed to demonstrate that he exercised control over the cocaine sales methods or distribution channels is similarly without merit. First, Cook's reliance on *Patrick* is misplaced, as *Patrick* involved the Government's burden in establishing that the defendant was part of a continuing criminal enterprise pursuant to 21 U.S.C. § 848, and had nothing whatsoever to do with the altogether different standard for application of an aggravating role enhancement. Even if the Government were required to make a showing that Cook organized or led the sales methods or distribution chan-

---

**3.** Cook argues that in fact he did object to the district court's aggravating role enhancement when in his "Objections to P.S.I. Report," filed May 10, 1999, he stated: "Defendant disagrees and objects to the computation of his time and it is his contention that the level stated in the P.S.I. report is wrong, excessive

and improperly calculated." While we are not persuaded that Cook made a sufficiently specific objection to preclude plain-error review of this issue, we need not resolve this question, because even under the more permissive clear-error standard, the district court's enhancement was appropriate.

nels—and we emphasize that it is not—it would easily have met its burden. There was ample evidence presented at trial that Cook (1) served as one of a number of investors in a drug ring that purchased cocaine from Florida and New York; (2) coordinated with Mullins the purchase of cocaine from various drug suppliers, including Terry Bridgeman; (3) traveled to North and South Carolina to purchase cocaine from at least two suppliers; (4) sold cocaine himself or served as a supplier to Mullins, who then sold the drugs provided by Cook; (5) supervised the pricing, delivery, and distribution of cocaine by his daughter, Dawn Cook; and (6) acted in concert with his wife, Carol Cook, to store cocaine in his truck and his house.

Because the district court's application of an aggravating role enhancement was well-founded and cannot be said to have been erroneous, Cook cannot satisfy the first prong of our plain-error inquiry, and his claim therefore must fail.

### c. Criminal History Determination

■ Stokes Cook filed an objection to his PSI, arguing that the probation officer erroneously listed therein two prior Carter County, Tennessee, drug convictions. Inclusion of those convictions resulted in the addition of three criminal history points, which increased his criminal history category from V to VI. Because the Government failed to prove the conviction at the sentencing hearing by introducing a certified copy of the conviction, he argues, the district court erred by including it in its calculation of the appropriate sentence.

Cook's argument is without merit. His assertion that the Government did not introduce a certified copy of his prior conviction obscures the fact that the district court did in fact receive a certified copy from the probation officer. The Guidelines make clear that a district court, in deter-

mining the relevant facts for sentencing purposes, may consider any information, "so long as it has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3, cmt. The district court's use of a certified copy of conviction provided a sufficiently reliable means of establishing Cook's prior convictions. We find no error.

### d. *Apprendi v. New Jersey*

■ If the jury has not found beyond a reasonable doubt that the defendant possessed the minimum amounts required by § 841(b)(1)(A) and § 841(b)(1)(B), then the defendant may be sentenced *only* under 21 U.S.C. § 841(b)(1)(C) when he is found guilty of violating 21 U.S.C. § 841(a)(1), for which he is eligible for a maximum term of imprisonment of twenty years. *See United States v. Ramirez*, 242 F.3d 348, 352 (6th Cir.2001). Where the Government has filed a Notice of Enhancement (because of the defendant's prior conviction for a felony drug offense), as the Government did in this case, a defendant properly sentenced under § 841(b)(1)(C) is subject to a maximum penalty of thirty years. The statutory maximum for Stokes Cook's first count of conviction—conspiracy to possess with the intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and § 846—is therefore thirty years. Because his sentence of 324 months did not exceed the statutory maximum penalty, Cook cannot demonstrate an *Apprendi* violation.

He nevertheless argues that the Notice of Enhancement introduced by the Government and relied upon by the district court was defective because it was predicated on false information that on October 2, 1989, he was convicted of possession of cocaine with the intent to sell. Thus, he maintains, the statutory maximum penalty for his conspiracy conviction is twenty

years. He submits in support of his argument two letters from a detention center "timekeeper," confirming that he was detained from August 7, 1989, until February 5, 1990, and that "[he] did not leave for an overnight stay for court on above dates." The import of these letters, Cook suggests, is that he could not have been convicted in state court while he was being held at a detention center awaiting prosecution on federal charges.

While we need not resolve this issue—also contained within the Notice of Enhancement was information that Cook in 1980 was convicted of a felony drug offense, a conviction he does not challenge—we note that even if the Government's Notice of Enhancement were factually inaccurate (and Cook were subject to a twenty-year statutory maximum penalty), there would still be no *Apprendi* violation, because his 324–month sentence does not exceed the combined statutory maximum penalties for his two counts of conviction, when those penalties are run consecutively. *See United States v. Page,* 232 F.3d 536, 545 (6th Cir.2000).

### III. CONCLUSION

For the foregoing reasons, we VACATE Dawn Cook's sentence and REMAND for resentencing, and AFFIRM the district court on all issues raised by Stokes Cook and Terry Bridgeman.