**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles VINSON, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Arlie B. THOMPSON,
Defendant-Appellant.**

**Nos. 78–5406, 78–5412.**

United States Court of Appeals,
Sixth Circuit.

Argued April 20, 1979.

Decided Sept. 27, 1979.

George I. Cline, Morehead, Ky., for defendants-appellants in 78–5406.

Clarence B. Creech, Ashland, Ky., for defendants-appellants in 78–5412.

Patrick H. Molloy, U. S. Atty., Lexington, Ky., for plaintiff-appellee in both cases.

Before EDWARDS, Chief Judge, and KEITH and MERRITT, Circuit Judges.

MERRITT, Circuit Judge.

After a jury trial in the United States District Court for the Eastern District of Kentucky, Vinson, Sheriff of Lawrence County, and Thompson, a county magistrate, were convicted of extorting money from a coal company and of conspiring to do so. 18 U.S.C. § 1951 (1976). We affirm the defendants' convictions. The major issue on appeal is whether the District Judge followed proper procedures governing admission of co-conspirator hearsay evidence. We address questions left unanswered by our recent decision in *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978), and establish guidelines for administering the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E).

I.

During the government's case-in-chief, the District Court admitted testimony describing out-of-court statements of Sheriff Vinson which tended to incriminate Magistrate Thompson in both the conspiracy and the substantive offenses. An officer of the coal company who was the target of the extortion plan testified that the Sheriff told him that the Magistrate was his agent in the extortion scheme and would pick up the extortion payments. Upon timely objection, the District Judge instructed the jury as follows:

> That [hearsay] will not be considered by you, ladies and gentlemen, as any evidence against [the Magistrate] until you are satisfied or the Court makes a ruling of a prima facie case of conspiracy.

Further along in the government's case, the District Judge made a preliminary finding that the government had proved a conspiracy involving the Sheriff and Magistrate by a preponderance of the evidence. He then ruled that the out-of-court statements of the Sheriff, made in the course of and in furtherance of the conspiracy, could be used as evidence against the Magistrate. He instructed the jury:

> Ladies and gentlemen . . . let me advise you that the admonition that I have given you earlier in the case about not considering certain testimony as to [the Magistrate] is now withdrawn.

Both defendants objected to the judge's second statement on the ground that it amounted to an improper comment on the sufficiency of the evidence. Although we believe that the judge should have made neither statement, we find that no prejudice resulted to defendants. The government's proof of the conspiracy as well as of the substantive offense rested on strong non-hearsay evidence which showed that the Sheriff, the Magistrate and an unindicted third person conspired to and, in fact, did extort money from the coal company. Sheriff Vinson was the principal in the scheme, and the Magistrate and the third person were his agents. The three threatened to harass the coal company's trucks which operated on county roads unless extortion payments were made. Two such payments were made before authorities apprehended the defendants. There was relatively little co-conspirator hearsay admitted both before and after the District Judge made his preliminary finding, and the jury had abundant, non-hearsay evidence on which to base its verdict. Moreover, any confusion which might have been caused by the trial judge's comments to the jury was cured by his final conspiracy instruction in which the elements of a criminal conspiracy and the government's burden of proof were clearly and correctly stated.

In *Enright* we held that, before the government can take advantage of the co-conspirator exception to the hearsay rule, it must show by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of the conspiracy, and (3) that the hearsay statement was made in the course and in furtherance of the conspiracy. We also held that this preliminary finding is the sole province of the trial judge. Fed.R.Evid. 104(a). In *En-*

*right*, however, we did not decide whether, before the judge has made his finding on the preliminary question, he may admit the hearsay subject to connection later in the trial, as did the trial judge here. We also did not decide whether the trial judge may consider the hearsay itself in making his preliminary finding.

■ A trial judge must have considerable discretion in controlling the mode and order of proof at trial [1] and his rulings should not cause reversal of a criminal conviction unless they "affect substantial rights." [2] Thus, we do not believe that it is appropriate to set forth hard and fast procedures. Rather, we set forth alternative means for District Judges to structure conspiracy trials, that will allow the government to present its proof while at the same time protecting defendants from inadmissible hearsay evidence.

■ One acceptable method is the so-called "mini-hearing" in which the court, without a jury, hears the government's proof of conspiracy and makes the preliminary *Enright* finding.[3] If the hearsay is found admissible, the case, including co-conspirator hearsay, is presented to the jury. Although this procedure has been criticized as burdensome, time-consuming and uneconomic,[4] a trial judge, in the exercise of his discretion, may choose to order the proof in this manner if the circumstances warrant.

■ The judge may also require the government to meet its initial burden by producing the non-hearsay evidence of conspiracy first prior to making the *Enright* finding concerning the hearsay's admissibility. This procedure clearly avoids "the danger . . . of injecting the record with inadmissible hearsay in anticipation of

1. Fed.R.Evid. 611(a). *See also United States v. James*, 590 F.2d 575, 588 (5th Cir. 1979) (*en banc*) (Tjoflat, J. concurring).

2. Fed.R.Crim.P. 52(a).

3. This procedure was adopted by a panel of the Fifth Circuit, *United States v. James*, 576 F.2d

1121 (1978), and subsequently modified by an *en banc* court, 590 F.2d 575 (1979).

4. *See* the majority and concurring opinions in the Fifth Circuit's *en banc* decision in *United States v. James*, 590 F.2d 575 (1979).

proof of a conspiracy which never materializes."[5]

■ The judge may also, as was done here, admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence. If this practice is followed, the court should stress to counsel that the statements are admitted subject to defendant's continuing objection and that the prosecution will be required to show by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the statements are hearsay was a participant and that the statement was made in the course and in furtherance thereof. At the conclusion of the government's case-in-chief, the court should rule on the defendant's hearsay objection. If the court finds that the government has met the burden of proof described in *Enright*, it should overrule the objection and let all the evidence, hearsay included, go to the jury, subject, of course, to instructions regarding the government's ultimate burden of proof beyond a reasonable doubt and the weight and credibility to be given to co-conspirators' statements. If, on the other hand, the court finds that the government has failed to carry its burden, it should, on defendant's motion, declare a mistrial unless convinced that a cautionary jury instruction would shield the defendant from prejudice.[6]

■ If the trial judge does choose to admit the hearsay (a) after the government has established the conspiracy by a preponderance at the trial, or (b) at a "mini-hearing," or (c) conditionally subject to connection, he should refrain from advising the jury of his findings that the government has satisfactorily proved the conspiracy. The judge should not describe to the jury the government's burden of proof on the preliminary question. Such an instruction can serve only to alert the jury that the judge has determined that a conspiracy involving the defendant has been proven by a preponderance of the evidence.[7] This may adversely affect the defendant's right to trial by jury. The judge's opinion is likely to influence strongly the opinion of individual jurors when they come to consider their verdict and judge the credibility of witnesses.

■ Finally, we believe that, whatever procedure a District Judge uses, the hearsay statements themselves may be considered by the judge in deciding the preliminary question of admissibility. The preliminary finding of conspiracy for purposes of the co-conspirator exception to the hearsay rule is a "question concerning . . . the admissibility of evidence" governed by Fed. R.Evid. 104(a), and we believe that the final sentence of Rule 104(a)—stating that the judge "is not bound by the rules of evidence"—modifies prior law to the contrary.[8] The fact that the judge may consider under Rule 104(a) hearsay evidence which the jury could not consider is an added reason the judge should refrain from advising the jury of his findings.

## II.

We now turn to defendants' other claims:

■ 1. Both defendants challenge the sufficiency of the evidence. The Sheriff argues that the testimony of the govern-

5. *United States v. Macklin*, 573 F.2d 1046, 1049 n. 3 (8th Cir.), *cert. denied* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

6. *United States v. James*, 590 F.2d at 581–83; *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978); *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969), *cert. denied* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

7. Herein lies the error that defendants claim was committed in the instant case. In fact, the District Judge did not state to the jury his opinion nor findings on the conspiracy, but perhaps his finding could be inferred from his ruling.

8. *See United States v. Enright*, 579 F.2d at 985 n. 4. There is a split of authority on this question. *Compare United States v. James*, 590 F.2d at 592 (Tjoflat, J. concurring) and *United States v. Martorano*, 557 F.2d 1, 12 (1st Cir. 1977), *cert. denied* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978) *with United States v. James*, 590 F.2d at 581 (Clark, J. for en banc court) and *United States v. Bell*, 573 F.2d at 1044.

ment's key witness, an executive of the coal company, was contradicted to such an extent as to render the verdict unsupportable. This key witness testified that the Sheriff came to see him, outlined the payoff scheme and sent the magistrate to collect the money. This testimony was most damaging, despite defense counsel's zealous attempts to rebut and impeach the witness. The fact that the jury chose to believe this witness and to disregard the Sheriff's attack on his credibility is no basis for reversal. The testimony was corroborated by other witnesses, and there was sufficient evidence from which the jury could find guilt beyond a reasonable doubt.

The evidence of the Magistrate's involvement in the conspiracy was also strong. A review of the record indicates that he twice collected extortion payments for the Sheriff from government agents acting undercover as coal company employees. The Magistrate made statements on at least two occasions which support an inference that he was aware that the payments were part of the extortion scheme. This evidence, as well as evidence of their association, was sufficient to support the verdict, and the jury was not required to accept the Magistrate's contrary explanation of events.

■ 2. Both defendants claim to have been prejudiced by the District Judge's denial of severance. Fed.R.Crim.P. 14. The argument is that the Sheriff's and the Magistrate's defenses were mutually antagonistic in that each defendant sought to cast the blame on the other. Absent some indication that the antagonism between co-defendants misled or confused the jury, the mere fact that co-defendants attempt to blame each other does not compel severance. *United States v. Perez*, 489 F.2d 51, 68 (5th Cir. 1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

■ 3. Both defendants argue that they were prejudiced by the government's delay in producing discoverable information. *See* Fed.R.Crim.P. 16. Specifically, defendants claim that pre-trial statements of government witness Davis, which tended to exculpate them, were not provided until it was too late for defense counsel to use them effectively. Assuming, *arguendo*, that Davis' statements were exculpatory, defendants were given sufficient opportunity to see and make use of the statements. The Magistrate obtained the statements before the trial began, and the Sheriff obtained them during the government's direct examination of Davis. Indeed, the Sheriff's counsel made use of the statements during his cross-examination of the witness. At most, defendants have shown that they would have preferred to have obtained the statements earlier. But they have failed to show any government bad faith or prejudice resulting from the procedure that was actually followed.

■ 4. The Sheriff claims that the District Court erred by refusing to instruct the jury to give less credence to witness Davis' testimony because he was a government informant. There is no evidence in the record to suggest that Davis was an informant, and, even if he had been, the court was not obliged to instruct the jury to this effect because his testimony was corroborated materially by other witnesses.[9] Moreover, the District Judge did instruct the jury to treat Davis' testimony with care because of evidence suggesting that he was an accomplice, and this had the same cautionary effect as if the judge had given the instruction the Sheriff requested.[10]

■ 5. The Magistrate claims that he was prejudiced when the United States Attorney elicited on cross-examination an admission that he had two pistols in his possession at the time of his arrest. The District Court had previously indicated that

---

**9.** *United States v. Garcia*, 528 F.2d 580 (5th Cir.), *cert. denied* 426 U.S. 952, 96 S.Ct. 3177, 50 L.Ed.2d 1190 (1976); *United States v. Lee*, 165 U.S.App.D.C. 50, 506 F.2d 111 (D.C.Cir. 1974), *cert. denied* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975).

**10.** *See generally* 2 Wright & Miller, Federal Practice and Procedure § 490 (1969 & Supp. 1979).

the Magistrate's possession of handguns was irrelevant and had directed the prosecution not to inquire about the weapons. The prosecutor did not directly question the Magistrate about this subject, but the questions which elicited the admission were, arguably, an indirect attempt to circumvent the judge's admonition. We cannot be sure of the prosecutor's motive; but, taken in context, we do not believe the questions affected the verdict in any way.

6. The Sheriff argues that the District Court erred by allowing the jury to read transcripts of tape recordings while the tapes were being played in open court. Although it is the preferred practice that transcripts of tapes not be submitted to the jury unless there is a stipulation as to their accuracy,[11] we do not believe Vinson was prejudiced by the procedures followed in this case. The District Judge reviewed both the tapes and transcripts before they were presented to the jury. Defense counsel were given copies of the transcripts before their use at trial and an opportunity to point out discrepancies between the tapes and the transcripts. The jury was carefully advised that transcripts were only an aid and that the tapes were the substantive evidence, and only the tapes were allowed in the jury room.[12]

7. Vinson argues that the trial judge erred by permitting co-defendant Thompson to call witnesses to rebut evidence introduced by Vinson. After Thompson had rested his case, Vinson called a witness who testified that, on a certain date when Thompson claimed he had delivered money to Vinson, Vinson was, in fact, elsewhere. Since Vinson's proof of alibi followed the close of Thompson's case and came as a surprise to Thompson, the District Judge let Thompson put on proof to rebut Vinson's story and to rebuild Thompson as a witness. Vinson was allowed to cross-examine Thompson's rebuttal witnesses. Control of the order and method of presentation of evidence is left to the discretion of the trial judge. Fed.R.Evid. 611(a). The rebuttal testimony was relevant, and its presentation was not procedurally unfair to Vinson.

8. The Sheriff objected on hearsay grounds to the admission of two "payoff" envelopes bearing the name "Sheriff Charles Vinson" and to the testimony of an undercover agent that the envelopes were so marked for the purpose of delivery to the Sheriff. The marked envelopes themselves were not hearsay because the three words were not introduced as a true statement of fact but merely served to identify "real" evidence, i. e., the envelopes in which the money was delivered. The words had operative effect regardless of the meaning the declarant intended them to have. *See* Fed. R.Evid. 801(c). The agent's testimony describing the purpose for which the Sheriff's name was written did not describe or recite an out-of-court statement at all but rather was a statement made by the witness in order to explain a past event. *Id.* He testified as to his own purpose as a participant in the preparation and delivery of the envelopes. The reliability of this evidence did not depend on "the language, sincerity, memory, or perception" of a declarant not present and subject to cross-examination.[13] We do not believe, in any event, that Vinson was prejudiced by this testimony because other evidence in the record convincingly shows that the envelopes and their contents were intended for delivery to Vinson.

9. Finally, the Sheriff argues that the District Court erred by limiting defense counsel's cross-examination of Davis. The Sheriff's counsel attempted to question Davis about a past scheme in

---

**11.** *United States v. Smith,* 537 F.2d 862, 863 (6th Cir. 1976); *United States v. Bryant,* 480 F.2d 785, 791 (2d Cir. 1973).

**12.** *See United States v. Rinn,* 586 F.2d 113, 117–18 (9th Cir. 1978), *cert. denied* —— U.S. ——, 99 S.Ct. 2051, 60 L.Ed.2d 659 (1979).

**13.** *See* E. Morgan, Some Problems of Proof Under the Anglo-American System of Litigation 127, 149–62 (1956).

which Davis and a third party had considered bribing the Sheriff. The cross-examination was offered to impeach Davis' credibility as a government witness. Fed. R.Evid. 608(b). The trial judge refused to allow the cross-examination on the ground that it was not "probative of truthfulness or untruthfulness." *Id.* Although it is arguable that prior misconduct of this nature is indicative of the witness' moral turpitude and, therefore, probative of his disregard for truth and honesty, such determinations under the rule are vested "in the discretion of the [trial] court." *Id.* We can find neither an abuse of discretion nor any significant harm to defendant. The question was remote on credibility and unrelated to the merits.

The judgments of conviction are AFFIRMED.