829 F.2d 1127
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maricela 'Mary' ESTRADA (86-3695) Jorge 'George' Estrada
(86-3697), Defendants-Appellants.
 Nos. 86-3695, 86-3697
 United States Court of Appeals, Sixth Circuit.
 September 24, 1987.
 
 Before BOYCE F. MARTIN and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Maricela Estrada and her brother Jorge Estrada appeal from convictions arising from their involvement in a conspiracy to unlawfully possess and distribute cocaine. Maricela argues that the district court committed reversible error by admitting a tape recorded conversation into evidence in which she only says 'Hello.' Jorge argues that the district court committed reversible error by permitting prosecuting attorneys to be present during a Rule 17(b), Fed. R. Crim. P., hearing and by failing to set forth specific findings regarding the existence of a conspiracy in ruling upon the admissibility of a coconspirator's hearsay statements. For the reasons which follow, we affirm defendants' convictions.
 
 I.
 
 2
 On February 16, 1986, an indictment was issued against Jorge Estrada, Maricela Estrada, Ricardo Padron and Julio Torres. Count 1 of the indictment alleged that these four individuals had engaged in a conspiracy from January 14, 1986, to February 1, 1986, to unlawfully possess with intent to distribute and to unlawfully distribute cocaine in violation of 21 U.S.C. Sec. 846. Count 2 alleged that on January 24, 1986, Jorge had knowingly and intentionally used a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. Sec. 843(b). Counts 3 and 5 alleged that Padron and Maricela had knowingly and intentionally used a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. Sec. 843(b). Count 4 alleged that Maricela, Padron and Torres had knowingly and willfully traveled in interstate commerce with the intent to distribute cocaine in violation of 18 U.S.C. Sec. 1952. Count 6 alleged that on February 1, 1986, the four defendants had knowingly and intentionally distributed three kilograms of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.
 
 
 3
 Padron and Torres pled guilty before trial, and a joint jury trial for the Estradas was conducted on May 27-29, 1986. The following evidence was adduced at trial.
 
 
 4
 Drug Enforcement Administration (DEA) Special Agent Richard Stuart testified that he learned of the Estradas' alleged drug dealings from Remajio Pou, a defendant in another drug case who claimed to have purchased his drugs from the Estradas. Agent Stuart directed Pou to arrange a meeting with Jorge, and on January 14, 1986, Agent Stuart testified that he and Pou met Jorge at a Denny's Restaurant in Miami, Florida. Two other DEA agents, Jim Hoy and Dennis McCarthy, conducted surveillance. Agent Stuart testified that he saw Jorge arrive in a red Pontiac Grand Am, along with another man whom Jorge subsequently introduced as his brother-in-law Eddie, who was later identified as Eduardo Diez.
 
 
 5
 At this meeting, Agent Stuart, acting undercover, represented that he wanted to purchase eight kilograms of cocaine every two weeks and was willing to spend $40,000 per kilogram if Jorge had the cocaine delivered to Cincinnati. Stuart testified that Jorge stated that he understood what Stuart wanted, and that he could provide that amount of cocaine at the stated price. Agent Stuart arranged for Jorge to contact him in Cincinnati the following week by calling his beeper/pager which would give a digital printout of the telephone number to call. Jorge responded that either he would call Stuart's beeper, or someone who spoke better English would place the call.
 
 
 6
 Agent Stuart testified that on January 21, 1986, his beeper/pager indicated that he was to call a particular phone number; this number was subsequently established to be registered in Jorge's wife's name. When Stuart called the number, a person answered the phone who identified himself as Pablo, and was later identified as Pablo Delgado. During that conversation, Delgado represented that the cocaine would be delivered only in Miami. Stuart refused that offer, insisting that the cocaine had to be delivered to Cincinnati. Delgado then spoke to someone in the background and gave Stuart three additional phone numbers. This entire conversation was tape recorded.
 
 
 7
 A subsequent telephone conversation in which Agent Stuart spoke to Jorge took place on January 24, 1986. The same method of contacting Agent Stuart by calling his beeper, and having Agent Stuart return the call, was used. On January 29, 1986, Stuart had two conversations on a telephone registered in Maricela's name. During the first conversation, Maricela informed Agent Stuart that the party she was waiting for had not yet arrived, and stated that she would call his beeper when it was a good time to return her call. During the second phone conversation an hour later, Maricela answered the telephone, and then turned the telephone over to Ricardo Padron. The remainder of the discussion was between Padron and Agent Stuart. Each of these conversations concerned arrangements to distribute three kilograms of cocaine and was tape recorded.
 
 
 8
 Pablo Delgado, who agreed to plead guilty to a criminal charge in connection with the conspiracy, also testified at trial. He testified that he had telephone conversations with a person named Dick, subsequently identified as Stuart, at Maricela's and Jorge's direction because he spoke better English. Delgado indicated that when he spoke to Agent Stuart from Jorge's house, Maricela was always present, that she told him what to say to Agent Stuart, and that she appeared to be in charge of the arrangements.
 
 
 9
 The two DEA agents who were conducting surveillance at Denny's Restaurant during Stuart's meeting with Jorge, testified that they observed Jorge arrive at Denny's Restaurant in a red Trans Am or Firebird and observed him talking to Agent Stuart. It was also established that the license plate of the car driven by Jorge was registered in his name.
 
 
 10
 All tape recordings of the telephone conversations were admitted into evidence, as well as a videotaped recording of the actual cocaine delivery in Cincinnati which occurred on February 1, 1986. The videotape reveals DEA agents presenting a briefcase filled with money to Maricela Estrada, Torres and Padron (Jorge Estrada was unable to deliver the drugs because of an illness), and shows the defendants subsequently splitting open a spare tire to recover three packages, each containing one kilogram of cocaine.
 
 
 11
 On May 29, 1986, the jury returned a verdict of guilty on all counts. Maricela was sentenced to terms of imprisonment of ten years on Counts 1 and 6, two years on Counts 3 and 5, and three years on Count 4, with the terms to run concurrently. Jorge was given prison terms of ten years on Counts 1 and 6 and two years on Count 2, with the terms to run concurrently.
 
 II.
 A.
 
 12
 Prior to trial, defendant Jorge Estrada filed a Rule 17(b) motion for prepayment of witnesses' travel expenses. Fed. R. Crim. P. 17(b). A hearing on this motion was conducted on May 13, 1986. Despite counsel's reminder to the court that Rule 17(b) provides for ex parte proceedings, two Assistant United States Attorneys were permitted to be present at the hearing, although they did not participate in the hearing or respond to the motion. During the hearing, defense counsel provided the court with the witnesses' names and their expected testimony. Specifically, he noted that Teresita Estrada, Jorge's wife, would testify as an alibi witness that Jorge had not left home on the days in question and that he was prohibited from driving his car.[1] Gizelle Hernandez was expected to testify that she had known Jorge for five years and that he was unable to speak English. Eduardo Diez, Jorge's brother-in-law, would either be an alibi or retuttal witness regarding Agent Stuart's meeting with Jorge.
 
 
 13
 On appeal, defendant Jorge Estrada asserts that the district court's decision to allow the government attorneys to be present at the Rule 17(b) hearing constitutes reversible error.
 
 Rule 17(b) provides in pertinent part:
 
 14
 The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. .. .
 
 
 15
 This rule, which provides for an ex parte application for witness fees, constitutes an amended version of a previous rule which did not provide for ex parte proceedings but required instead that an indigent defendant reveal the names and expected testimony of proposed witnesses in order to qualify for funds. The old rule placed indigent defendants on different footing than other defendants because they were required to reveal the theories of their defense to the prosecution. See United States v. Barker, 553 F.2d 1013, 1020 (6th Cir. 1977); United States v. Meriwether, 486 F.2d 498, 505-06 (5th Cir. 1973), cert. denied, 417 U.S. 948 (1974). It was recognized that a prosecuting attorney's mere presence at the hearing, as opposed to actual participation in the proceedings, had this unequal effect since witnesses' names and a discussion of the content of their expected testimony would reveal a defendant's strategy and theories of defense. Meriwether, 486 F.2d at 506.
 
 
 16
 By providing for ex parte proceedings, Rule 17(b) was intended to shield indigent defendants from having to reveal theories of their defense to the prosecution thereby eliminating these inequities. While ex parte proceedings are an essential part of Rule 17(b), there still must be a showing of prejudice to the defendant for a conviction to be reversed for failure to provide such proceedings. Meriwether, 486 F.2d at 506; United States v. Brown, 535 F.2d 424 (8th Cir. 1976).
 
 
 17
 We believe that the district court violated Rule 17(b) by failing to hold an ex parte hearing upon defendant's motion for prepayment of witnesses' travel expenses. However, we cannot conclude that this error resulted in any prejudice to defendant. Although defendant revealed the names of prospective witnesses and their expected testimony, defendant's alibi and rebuttal evidence was particularly weak in light of the government's proofs. The government's awareness of this evidence and of defendant's possible theories of defense did not significantly aid the government in developing its case. Accordingly, we conclude that the Rule 17(b) violation did not constitute reversible error.
 
 B.
 
 18
 Pursuant to United States v. Vinson, 606 F.2d 149 (6th Cir. 1979), cert. denied, 444 U.S. 1074 and 445 U.S. 904 (1980), a trial court is permitted to admit an alleged coconspirator's hearsay statements 'subject to later demonstration of their admissibility by a preponderance of the evidence.' Id. at 153. This procedure allows trial courts to rely on the hearsay statements themselves to determine whether the statements are admissible under Fed. R. Evid. 801(d)(2)(E).[2] United States v. Christian, 786 F.2d 203, 211-12 (6th Cir. 1986); United States v. Arnott, 704 F.2d 322, 325 (6th Cir.), cert. denied, 464 U.S. 948 (1983). This use of an alleged coconspirator's statements was recently upheld by the United States Supreme Court in Bourjaily v. United States, 55 U.S.L.W. 4962, 4964 (June 23, 1987) ('in making a preliminary factual determination under Rule 801(d)(2)(E), [a court] may examine the hearsay statements sought to be admitted').
 
 
 19
 To be admissible as proof of a conspiracy under Rule 801(d)(2)(E), the hearsay statements must show by a preponderance of the evidence,' (1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of the conspiracy, (3) that the statement was made during the course of the conspiracy, and (4) that the statement was made in furtherance of the conspiracy.' United States v. McLernon, 746 F.2d 1098, 1105 (6th Cir. 1984); see also United States v. Enright, 579 F.2d 980, 986 (6th Cir. 1978); United States v. Holloway, 740 F.2d 1373, 1375-76 & n.2 (6th Cir.), cert. denied, 469 U.S. 1021 (1984).
 
 
 20
 In the instant case, defendant Jorge Estrada's counsel raised objections to Pablo Delgado's testimony. Although the grounds for objection are not entirely clear from the transcript, the district agreed to caution the jury in accordance with Vinson. Further, the court made the following statements from the bench after Delgado had testified:
 
 
 21
 In accordance with United States vs. Vinson, 606 F.2d 149, I find that the United States has established by a preponderance of the evidence that a conspiracy existed, that the defendant against whom those statements are hearsay was a participant, and that the statement was made in the course and furtherance of such conspiracy, and, accordingly, I overrule the hearsay objections of the defendant.
 
 
 22
 On appeal, defendant Jorge Estrada does not challenge the admissibility of Delgado's statements; rather, he argues that the district court set forth insufficient findings of fact to support its admissibility determination. We reject this assertion. The Vinson line of cases does not require the district court to detail which portions of a coconspirator's testimony supports its conclusion that the testimony is admissible under Rule 801(d)(2)(E), nor do we believe that such a requirement is necessary. Presumably, the basis for such a requirement would be to aid appellate review of admissibility determinations. However, we do not need the district court's reasoning to determine whether the testimony of an alleged coconspirator is admissible under Rule 801(d)(2)(E). Rather, since the trial transcript contains the hearsay statements, the lack of detailed findings of fact on the record does not hinder this court in its review of the actual statements themselves to determine their admissibility. Accordingly, we detect no reversible error.
 
 
 23
 Finally, Jorge Estrada argues that the district court erred in not giving him an opportunity to testify about the coconspirator's statements before they came into evidence. Our review of the record indicates that Mr. Estrada never requested the opportunity to so testify. Absent such a request, we cannot find reversible error.
 
 C.
 
 24
 Defendant Maricela Estrada argues that the district court erred in admitting the taperecording of the second telephone conversation occurring on January 29, 1986, in which Maricela only said 'Hello,' and the remainder of the conversation was between Agent Stuart and Ricardo Padron. She objected to the admission of this evidence on the ground that the conversation did not involve her. However, the one case relied on by defendant, United States v. McLernon, 746 F.2d 1098 (6th Cir. 1984), concerns the sufficiency of evidence to uphold a conviction under 21 U.S.C. Sec. 843(b), not the admissibility of evidence. Accordingly, we will address both whether the recording was properly admitted and whether the evidence was sufficient to uphold a section 843(b) conviction.
 
 
 25
 Count 3 of the indictment charged Ricardo Padron and Maricela Estrada with knowingly and intentionally using a telephone on January 29, 1986, to facilitate the distribution of cocaine. Using a telephone in this manner constitutes a violation of section 843(b), which provides:
 
 
 26
 It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purpose of this subsection, the term 'communication facility' means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.
 
 
 27
 21 U.S.C. Sec. 843(b).
 
 
 28
 The elements of section 843(b) are the (1) knowing or intentional (2) use of a telephone (3) to facilitate the commission of the offense charged. United States v. Rey, 641 F.2d 222, 224 n.6 (5th Cir.), cert. denied, 454 U.S. 861 (1981); McLernon, 746 F.2d at 1105. To 'facilitate' the commission of an offense means to 'make easier.' United States v. Watson, 594 F.2d 1330, 1342 (10th Cir.), cert. denied, 444 U.S. 840 (1979). Whereas one statement may be insufficient to support a conviction under section 843(b), the statement must be looked at in the context in which it was made. McLernon, 746 F.2d at 1106.
 
 
 29
 Further, the admissibility of a tape recording is subject to the rules of evidence generally. Watson, 594 F.2d at 1334. This means that a proper foundation must be laid, the evidence must be relevant and not privileged, and there must be evidence of a correct phone number. Id.
 
 
 30
 The evidence reveals that there were actually two telephone conversations on January 29, 1986. The first conversation was between Maricela Estrada and Agent Stuart, when Maricela informed Agent Stuart that the party she was waiting for had not yet arrived. She stated that she would call his beeper when it was a good time to return her call. When Agent Stuart received a message on his beeper/pager one hour later to call Maricela's phone number, Maricela answered the phone and then turned the phone over to Ricardo Padron. The conversation between Padron and Agent Stuart concerned the details of the cocaine delivery. The government argues that it can be inferred from Padron's statements that he was receiving directions from Maricela.
 
 
 31
 Regarding the admissibility of this tape recorded conversation, there is evidence, provided by the use of Agent Stuart's beeper/pager and his testimony, that the phone calls were made to Maricela Estrada's phone. Therefore, there is evidence of a correct phone number. Second, from the context of the tape recording, it is clear that the evidence was relevant since the conversation focused on details of the illegal drug transaction, and there is no indication that the conversation was in any way privileged. Finally, there is no allegation that a proper foundation was not laid and the transcript does not reveal such a deficiency. Accordingly, we conclude that the tape recording was properly admitted.
 
 
 32
 Further, we believe that there is sufficient evidence to support a conviction under section 843(b). The January 29, 1986 tape recording established that Maricela Estrada called Agent Stuart's beeper, and when he returned the call, Maricela stated that she would tell him when to call back for more information. She answered the phone when Agent Stuart called the second time. The conversation between Ricardo Padron and Stuart, which directly followed this initial exchange, concerned the details of the cocaine delivery. During this conversation, Padron pauses in order to speak to someone in the background, and it can reasonably be inferred that Padron is consulting with Maricela over the drug transfer details. From these factors, it is evident that Maricela knowingly used a telephone to facilitate the illegal distribution of cocaine. Therefore, we find that the elements of section 843(b) have been satisfied.
 
 
 33
 Accordingly, we AFFIRM the defendants' convictions.
 
 
 
 [1]
 This evidence was intended to show that Jorge could not have driven to Denny's Restaurant in a red sports car
 
 
 [2]
 Rule 801(d)(2)(E) provides that a 'statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.'