887 F.2d 1088
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Rennie V. PENNANT, (88-3938) Lori Bennett, (88-4008) Howard
D. Levy, (88-4093), Defendants-Appellees.
 Nos. 88-3938, 88-4008 and 88-4093.
 United States Court of Appeals, Sixth Circuit.
 Oct. 12, 1989.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and THOMAS A. WISEMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 These consolidated appeals stem from convictions for criminal activities related to the transportation and sale of cocaine. Appellants raise five issues on appeal: (1) Howard D. Levy and Lori Bennett, both of whom were found guilty by a jury, argue that the government failed to disclose all material promises and considerations given to government witness Pamela Patton in exchange for her testimony; (2) Mr. Levy argues further that the trial court abused its discretion in deferring a ruling on the admissibility of co-conspirators' statements pursuant to Fed.R.Evid. 801(d)(2)(E) until the conclusion of the government's case; (3) Levy also claims that the evidence was not sufficient to support the jury's finding that he committed all the offenses charged in the indictment; (4) Rennie V. Pennant, who entered a plea of guilty, argues that the trial court abused its discretion in sentencing him; (5) Pennant also maintains that 18 U.S.C. Sec. 3013, providing for the special felony assessments, is unconstitutional under the Origination Clause, U.S. Const. art. I, Sec. 7, cl. 1, because the statute provides for raising revenue and the measure originated in the Senate rather than in the House of Representatives. Finding each of the asserted grounds for appeal without merit, we shall affirm the challenged sentence and convictions.
 
 I.
 
 2
 On April 16, 1988, the three appellants, as well as co-defendant Errol Temple, were arrested at the home of a government witness, Pamela Patton, in Columbus, Ohio. Levy, Pennant and Temple had met a Drug Enforcement Administration undercover agent there to negotiate the sale of a kilogram of cocaine. Ms. Bennett was in a upstairs bedroom at the time.
 
 
 3
 A grand jury charged all four defendants with conspiracy to possess cocaine for further distribution, in violation of 21 U.S.C. Sec. 846, and with travel in interstate commerce to carry on an unlawful activity, in violation of 18 U.S.C. Sec. 1952. Pennant, Temple, and Levy were charged with using a telephone to further an unlawful activity, in violation of 21 U.S.C. Sec. 843(b), and with possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 4
 A jury trial was conducted in the United States District Court for the Southern District of Ohio before District Judge James Graham. During voir dire, Pennant and Temple changed their pleas to guilty on all counts. No plea agreements were entered into. Following a three-day trial, appellant Levy was found guilty on all counts--conspiracy, the travel count, the telephone count, and the distribution count. Appellant Bennett was convicted of conspiracy but acquitted on the travel count.
 
 
 5
 The court sentenced Pennant to a term of imprisonment of 75 months, a five-year period of supervised release, and a $50 special assessment on each count. Levy was sentenced to 121 months' imprisonment, a five-year period of supervised release, a $1,000 fine, and a $50 special assessment on each count. Ms. Bennett was sentenced to a two-year term of imprisonment, followed by a five-year period of supervised release, and a $50 special assessment for her role as a courier. Defendant Temple received a two-year term of imprisonment. He did not appeal his conviction or sentence.
 
 II
 
 6
 * Mr. Levy and Ms. Bennett appeal on the ground that the prosecution did not reveal sufficient details of its plea arrangement with Pamela Patton. As a result, it is claimed, counsel were unable adequately to impeach her credibility.
 
 
 7
 The government is required to disclose impeachment evidence at trial, but not before. Giglio v. United States, 405 U.S. 150 (1972). It appears from the record that the prosecutor could have provided defense counsel with a more organized summary of exactly what charges Ms. Patton faced when she made her plea bargain, but appellants were not prejudiced by any shortcomings in this regard. The government disclosed that Ms. Patton was paid money. The government also revealed her prior criminal record of three misdemeanors, as well as the fact that she pled guilty to a state misdemeanor after a felony conspiracy count was dismissed. Although defendants were not told her probationary period was two years in length, they were told she was on probation, and Ms. Patton disclosed the two-year time period when asked about it on cross-examination.
 
 
 8
 On direct examination, the jury learned of Ms. Patton's status as a fugitive, her belief that there were three misdemeanors and one felony charge outstanding while she was a fugitive, and that these charges were reduced to one misdemeanor charge in return for her cooperation. She admitted introducing Pennant to the DEA agent by agreement, and she admitted receiving $3,800 as a cooperating witness.
 
 
 9
 On cross-examination, Ms. Patton admitted to selling at least 200 pounds of marijuana over a one year period prior to June 1985. Her co-conspirators were indicted and pled guilty while she was a fugitive. She said she though other misdemeanors involving telephone charges, wiretaps, and fleeing prosecution were also dropped pursuant to her cooperation. In reality, the only charge dismissed was a federal conspiracy charge. Ms. Patton did not recall any written plea agreement, but she said she knew she had pled guilty to a misdemeanor when the felony charge was dismissed and that she did not have to go to jail. She testified that she thought she was facing 20 years' imprisonment. In actuality, it appears, she faced only 15 years.
 
 
 10
 The fact that Ms. Patton imagined her plea bargain was more beneficial to her than it really was helped the appellants rather than hurting them. And there was no impeachment evidence here that did not come to light at the time of the trial--a circumstance that distinguishes this case from Giglio. Agreements such as this are troublesome, and they have an obvious potential for inducing false testimony, but in the present case the truth of Ms. Patton's testimony was rigorously tested in cross examination. No question has been raised as to the adequacy of the court's jury instructions, and we have no reason to suppose that the jury reached an erroneous conclusion.
 
 B
 
 11
 The trial court conditionally admitted out-of-court statements of the alleged co-conspirators, and, pursuant to United States v. Vinson, 606 F.2d 149 (6th Cir.1979), cert. denied, 444 U.S. 1074 and 445 U.S. 904 (1980), the court deferred a definitive ruling on the admissibility of the statements until the end of the government's case in chief. Relying on the hearsay statements themselves, as permitted by Bourjaily v. United States, 483 U.S. 171 (1987), the court found that the preponderance of the evidence indicated the existence of a conspiracy; the statements were admitted on that basis.
 
 
 12
 The Supreme Court noted in Bourjaily that it was expressing no opinion on the proper order of proof. 483 U.S. at 176 n. 1. In Vinson, this court held that "the hearsay statements themselves may be considered by the judge in deciding the preliminary question of admissibility." 606 F.2d at 149. Nothing in Bourjaily disturbs this binding precedent.
 
 C
 
 13
 Mr. Levy also contends that there was insufficient evidence to link him to the conspiracy and the sale.
 
 
 14
 As Ms. Patton testified, Levy arrived at her house on April 15, 1989, accompanied by Lori Bennett. The kilogram of cocaine was concealed in a garment bag carried by Ms. Bennett. Levy's clothing was in this same bag. Ms. Bennett told Ms. Patton she was a runner/drug courier for Levy.
 
 
 15
 Prior to their arrival in Columbus on April 15, 1988, Pennant and Temple told the undercover agent that they had a "boss man." Whenever they needed something, they called the "boss man" and he supplied it.
 
 
 16
 When the undercover agent arrived at the Patton house to buy the cocaine, Levy was present as were Pennant and Temple. Levy was present when Pennant and the agent discussed price, when the agent was given a sample of the drug, and when he was shown the full kilogram. Pennant acknowledged that Levy was his partner and said "he's cool." Pennant also acknowledged that Levy was the one to whom the agent talked on the telephone the night before. The agent asked Levy if he were there to make sure everything went smoothly. Levy responded, "Yeah, we were starting man to think man something funny man." Levy told the agent that Pennant and Temple set the price. When the police arrived, Levy fled the scene. He was apprehended a block and one-half away. He gave a false name to the arresting officers, and it turned out he had used a false name to fly to Columbus from New York.
 
 
 17
 There was ample evidence to link Levy to the conspiracy.
 
 D
 
 18
 We review sentences to see if they are clearly erroneous. United States v. Perez, 871 F.2d 45 (6th Cir.), cert. denied, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). Appellant Pennant was sentenced to 75 months' imprisonment, and he admits in his brief that the guideline range was 63 to 78 months. If sentences within the guideline range are reviewable at all (a question we do not decide), we have been given no reason to suppose that this sentence was clearly erroneous.
 
 E
 
 19
 Pennant contends that the court's order that he pay $400 in special assessments is unconstitutional because 18 U.S.C. Sec. 3013 is a revenue measure originated by the Senate in violation of the Origination Clause. U.S. Const. art. I, Sec. 7, cl. 1. This court has recently held that the statute is not a revenue-raising measure. United States v. Ashburn, --- F.2d ----, (6th Cir.1989).
 
 
 20
 For the foregoing reasons, we AFFIRM the convictions and sentences.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Chief Judge of the United States District Court for the Middle District of Tennessee, sitting by designation