41 F.3d 1508
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robin McCOY, et al, Defendants-Appellants.
 Nos. 92-4364, 93-3850 and 93-4022.
 United States Court of Appeals, Sixth Circuit.
 Nov. 18, 1994.
 
 Before: KEITH, WELLFORD and DAUGHTREY Circuit Judges.
 PER CURIAM.
 
 
 1
 The Defendants-Appellants Charles A. Dunn ("Dunn"), Robin M. McCoy ("McCoy") and Creedon Ward ("Ward") (jointly the "Defendants") appeal the judgment of conviction and sentences imposed for conspiracy to distribute cocaine, distribution of cocaine and possession with the intent to distribute. For the reasons stated below we AFFIRM.
 
 I. Statement of the Case
 A. Procedural History
 
 2
 On March 19, 1992, the federal grand jury for the Southern District of Ohio, Eastern Division, returned a 29-count Superseding Indictment charging Keith Logan ("Logan"), Vaughn D. Bass, Jr. ("Bass"), Dunn, McCoy, Ward, James C. White ("White"), Derrick Spencer, Jr. ("Spencer") and Austin C. Tolber ("Tolber") with a variety of offenses under Titles 18 and 21 of the United States Criminal Code.
 
 
 3
 Count 1 charged each defendant with conspiracy to possess with the intent to distribute more than five kilograms of cocaine and more than 50 grams of cocaine base, in violation of 21 U.S.C. Sec. 846. Count 2 charged Dunn and White with using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c). Count 3 charged Dunn individually with a similar 18 U.S.C. Sec. 924(c) offense. Counts 4, 5, 7, 9 and 11 charged Dunn individually, counts 6 and 22 charged McCoy individually, count 8 charged Logan individually and counts 26 and 27 charged Bass individually, with distributing cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(C). Count 10 charged Spencer with possession with the intent to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(C). Counts 12, 14, 15, 16, 17, 18, 19, 20, 21 and 24 charged both Dunn and McCoy with distributing Cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(C) and 18 U.S.C. Sec. 2. Count 13 charged Dunn, McCoy and Tolber with possessing with the intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(ii) and 18 U.S.C. Sec. 2. Count 23 charged Logan and Bass with distributing cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(C) and 18 U.S.C. Sec. 2. Count 25 charged Dunn and Tolber with possession with the intent to distribute more than five grams of cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(iii) and 18 U.S.C. Sec. 2. Count 28 charged Logan, Dunn, McCoy and Bass with possession with the intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(B)(ii) and 18 U.S.C. Sec. 2. Count 29 charged Dunn with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. Sec. 848(a). At arraignment all defendants plead not guilty to their respective charges.
 
 
 4
 Prior to trial Bass and Tolber entered into plea agreements and agreed to testify against the Defendants at trial. The trial started on August 12, 1992 and progressed as usual until August 20, 1992 when Spencer changed his plea and agreed to testify against Dunn, McCoy, Ward and White.
 
 
 5
 At trial Bass, Jeff Craig ("Craig"), Logan, Spencer, Special Agent Rodney Russell ("Agent Russell"), Tolber and Snow all testified against the Defendants about how the conspiracy worked as well as on individual dealings each had with the Defendants. In addition to the testimony of these individuals, the government produced a great deal of physical evidence, accumulated from the execution of various search warrants. This evidence included a number of firearms, cocaine, phone records, financial ledgers and transaction logs.
 
 
 6
 On September 4, 1992, the jury found Dunn guilty on all charges against him in the indictment except for Count two. McCoy was found guilty of all charges against her in the indictment and Ward was found guilty on the sole charge against him. White was acquitted on each count he was charged with in the indictment.
 
 
 7
 On December 21, 1992, McCoy was given three 292 months prison sentences for counts 1, 13, and 28. She was also given five 240 month prison sentences for counts 6, 12, 14, 22 and 24. All eight of the sentences to run concurrently. McCoy also received a five-year period of supervised release on each count and a $750 special assessment fee.
 
 
 8
 On July 9, 1993, Ward was sentenced to a 230 month prison term, a $20,000 fine, a five-year period of supervised release and a $50 special assessment fee.
 
 
 9
 On September 13, 1993, Dunn was sentenced to 292 months in prison on each of counts 1, 13, 15, 28 and 29, to run concurrently; to 240 months in prison on each of counts 4, 5, 7, 9, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21 and 24, to run concurrently with all other counts of the conviction; and a 60 month prison term on count 3, to run consecutively to all other counts of the conviction. He also received a five-year period of supervised release on all counts except count three for which he received a three-year period of supervised release, each period to run concurrently, and a $1,050 special assessment fee.
 
 
 10
 McCoy, Dunn and Ward filed this timely appeal.
 
 B. Statement of Facts
 
 11
 The investigation into this conspiracy began in April 1991 and concluded in early February 1992. Agents of the Federal Bureau of Alcohol, Tobacco, and Firearms, the Ohio Bureau of Criminal Identification, the Columbus Police Department Narcotic Unit and the Franklin County Sheriff Department Narcotics Task Force all participated in the investigation that resulted in the arrest, prosecution and conviction of the Defendants.
 
 
 12
 This conspiracy was born in the fall of 1990, when Dunn and Spencer became acquaintances of Ward, Craig and Todd Snow ("Snow"). Dunn and Spencer made frequent trips to Brian Smith's ("Smith") home in Dayton, Ohio to buy cocaine in amounts from one ounce to one-half kilogram. These trips continued until the end of April 1991 when Dunn began receiving more cocaine at a better price from a new connection in Florida. Dunn and Ward made the first trip to Florida where they purchased and returned with nine and one-half ounces of cocaine. After that trip, Ward made up to two trips to Florida per week and returned with amounts of up to three kilograms.
 
 
 13
 Once Ward returned from Florida with the drugs, Craig, Dunn and McCoy would prepare the cocaine for sale and then distribute it to various locations. Dunn utilized up to twenty different individuals to distribute the cocaine. Among those individuals were Bass, Craig, Logan, Snow and Tolber.
 
 
 14
 From November 8, 1991 to January 29, 1992 Agent Russell, while undercover, made a series of drug buys from Bass and/or Logan, at Bass's residence. On January 30, 1992 Agent Russell met with Logan and Bass to discuss the purchase of a kilogram of cocaine. Agent Russell, went to 4085 Elaine Park, where he was told the price for a kilogram of cocaine would be $28,000 and that the drugs were to be delivered by McCoy. When McCoy arrived Logan went out to her car and returned with several "baggies" of cocaine. Agent Russell then alerted back-up officers to execute the search warrant for Bass's apartment. Coincident with the execution of the warrant, Logan, McCoy and Dunn were arrested. Following the execution of the search warrant at Bass's apartment, search warrants were also executed at the respective residences of Dunn and Ward. Ward was arrested on May 12, 1992 by the Wildwood, Florida Police Department after a narcotics detection dog reacted affirmatively to Ward's vehicle.
 
 II. Discussion
 
 15
 On appeal, the Defendant's have alleged a number of prejudicial errors by the district court which they claim denied them their constitutional right to a fair trial. Collectively the Defendants argue that the district court erred by 1) allowing Spencer to change his plea in the middle of the trial and testify against the Defendants and 2) using 116 kilograms of cocaine to determine their sentences. McCoy argues that the district court abused its discretion by not allowing Dunn to reopen his case-in-chief. Dunn argues 1) the conviction for engaging in a continuing criminal enterprise is not supported by the evidence and 2) his right to effective assistance of counsel and a fair trial were denied by the district court's rulings pertaining to the calling of Dunn as a witness in his own behalf. Ward argues that 1) the district court erred by allowing the use of hearsay to establish his part in the conspiracy and 2) the denial of his pro se motion for a new trial was an abuse of discretion.
 
 A. The Defendants
 
 16
 1. Allowing Spencer to change his plea and testify.
 
 
 17
 The Defendants contend they were prejudiced by the district court allowing Spencer to change his plea and testify. They also assert the district court erred by not properly cautioning the jury not to infer guilt to the other defendants because of Spencer's change of plea.
 
 
 18
 The Defendants were not prejudiced by Spencer's testimony and plea. See United States v. Bavers, 787 F.2d 1022 (6th Cir.1985). The Sixth Circuit in Bavers found no error in allowing a co-defendant to change his/her plea during the course of a trial and testify against his co-defendants. Id. at 1028. The Bavers court further held there is no error in failing to sequester a co-defendant who changes his/her plea during trial, because any sequestration order applies only to known witnesses. Id. at 1029. Although not required by the holding in Bavers the district court went to great lengths to ensure the government's counsel was not privy to the information Spencer possessed about the Defendant's case by interviewing Spencer, Spencer's attorney and the United States attorney.
 
 
 19
 The second error argued by the Defendants is similarly without merit. It was proper for the trial court to give a cautionary instruction at the end of the trial rather than at the time of the plea change. Id. at 1028.
 
 
 20
 In the instant case, the district court instructed the jury that no weight was to be given to the fact Spencer changed his plea in the middle of the trial. This instruction was given at the close of evidence and before the jury retired to consider a verdict. The district court complied with Bavers by making efforts to ensure no confidential information about the co-defendants case was given to the government and properly instructed the jury about Spencer changing his plea during the trial.
 
 
 21
 2. Refusal to allow Spencer's Attorney to Testify
 
 
 22
 The Defendants next argue they were denied the opportunity to call Spencer's attorney, John J. Connors, Jr. ("Connors"). The Defendants claim they wanted to call Connors in order to rebut Spencer's testimony and deny the government's implication Dunn and Ward conspired with Connors to keep Spencer silent. They assert they were prevented from calling Connors to testify because of the district court's ethical warning to Connors.
 
 
 23
 After Spencer changed his plea, the district court reminded Connors of his ethical responsibilities under the attorney-client privilege. This privilege requires Connors not disclose any information shared by his client during the course of his representation.
 
 
 24
 The Defendant's were not prejudiced by this warning nor by the failure of Connors to testify. Defendant's counsel never made any attempt to call Connors to the stand during the trial. The district court placed no limitation on Connors's ability to testify. The only limitation placed on Connors was a reminder of his ethical obligation to his client which prevented him from sharing any confidential information he may have learned from Spencer during the course of his representation.
 
 
 25
 3. Sentencing.
 
 
 26
 The Defendants claim the district court erred by using a 116 kilograms of cocaine figure to calculate their sentences. Review of the district court's findings in a guideline sentencing hearing is governed by 18 U.S.C. Sec. 3742(e). "[T]he court of appeals ... shall accept the findings of fact of the district court unless they are clearly erroneous...." Id. ; United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 (1989). A district court's sentencing decision will not be upset, as being clearly erroneous, so long as the findings of fact are supported by the evidence. Id.
 
 
 27
 The district court's findings of fact support the 116 kilogram figure used to calculate the Defendants' sentences. Co-conspirator testimony and the presentence report point to a constant supply of cocaine through Ward's many trips to Florida. The presentence report used this testimony to determine that during the four months Ward traveled to Florida and he returned with one to two kilograms of cocaine per trip. The probation officer used this testimony to determine that 116 kilograms was distributed by this conspiracy. The district court found these figures to be the most credible method of determining the amount of drugs involved in this conspiracy.
 
 
 28
 The district court was not clearly erroneous in establishing the amount of cocaine distributed in this conspiracy to be 116 kilograms.
 
 B. McCoy
 
 29
 McCoy asserts she was prejudiced by the district court's refusal to re-open Dunn's case-in-chief. This argument lacks merit.
 
 
 30
 The decision whether to grant a motion to reopen a case-in-chief is within the discretion of the district court and should not be disturbed without a clear showing of an abuse of discretion. United States v. Wade, 364 F.2d 931, 936 (6th Cir.1966). Considerable latitude in discretion is vested in the district court when deciding whether to allow a party to submit new evidence after they have closed their case-in-chief. United States v. Walker, 772 F.2d 1172, 1177 (6th Cir.1985) (citations omitted). When deciding whether to reopen a case-in-chief, the district court must consider the following factors: 1) the timeliness of the motion; 2) the character of the evidence; 3) the effect of granting the motion; and 4) the explanation of the party seeking to reopen their case-in-chief. Id (citations omitted). There has been no showing of an abuse of discretion, by the district court.
 
 
 31
 Although Dunn's motion was timely, his motion failed because he could not provide the court with a reasonable explanation why the evidence was not presented during his case-in-chief. Dunn wanted to reopen his case-in-chief to expand on his testimony regarding the amount of money he had made and to deny any drug dealing. Dunn was provided with every opportunity to testify, and elected to cut his testimony short. His failure to discuss certain points during his original testimony was a tactical decision.
 
 
 32
 McCoy may well have been prejudiced by her decision to call Dunn as a witness. Any prejudice caused to McCoy, from Dunn testifying, was the result of her ill-advised decision to recall Dunn to the stand. The district court committed no error, however, by refusing to allow Dunn to reopen his case-in-chief.
 
 C. Dunn
 
 33
 1. Conviction for engaging in a continuing criminal enterprise
 
 
 34
 Dunn claims the government failed to prove the necessary elements required in order to find a him guilty of engaging in a continuing criminal enterprise ("CCE"). In order to prove a CCE, the government must establish: 1) a felony violation of federal narcotics law, 2) as part of a continuing series of violations, 3) in concert with five or more persons, 4) for whom the defendant is an organizer, supervisor or manager and 5) from which he derives substantial income. 21 U.S.C. Sec. 848(a). The standard of review for such a conviction is whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Davis, 809 F.2d 1194, 1203 (6th Cir.), cert. denied, 483 U.S. 1007 (1987).
 
 
 35
 Dunn argues the government cannot prove he acted in concert with five or more people or that he derived substantial income from the criminal enterprise. Dunn claims the government can only point to McCoy and Tolber, as being controlled by Dunn. He claims Ward, Craig, Snow, Logan, Bass and others do not meet the standards established by this circuit in U.S. v. Patrick, 965 F.2d 1390 (6th Cir.), cert. denied, 113 S.Ct. 376 (1992).
 
 
 36
 The Patrick court held there must be a relationship beyond a mere buyer/seller. Id. at 1396. It is not necessary for an individual to be personally in control of those that work for him, he is still in control, under the CCE statute, if he directs a "foreman" to hire employees. Id. at 1397.
 
 
 37
 Dunn's argument that his relationship with Ward was buyer/seller in nature is not supported by the evidence. Ward did more than sell drugs to Dunn, he was his pipeline from Florida to Columbus. Ward's trips to Florida were made at the direction of Dunn and the drugs were purchased with money Dunn gave to Ward.
 
 
 38
 Dunn also claims Snow, Craig and Spencer were independent dealers, who only had buyer/seller relationships with Dunn. However Snow's testimony shows that Dunn acknowledged Craig, Spencer and Snow for their help in establishing his drug distribution enterprise. Tolber testified that on at least one occasion Snow helped break down a "kilo" of cocaine for Dunn. While each of these individuals may have had their own drug selling operations, they were all, at one time or another, involved in the CCE run by Dunn.
 
 
 39
 Dunn's argument that he did not make a substantial amount of money from the CCE is without merit. Testimony demonstrated Dunn was able to purchase a $30,000 Mercedes-Benz, with a cash down payment of $5,000. Further testimony showed that Dunn counted $100,000 in cash at his home and he was seen in possession of "thousands" of dollars. The evidence presented at trial proves Dunn was in control of at least five people and did make "substantial" amounts of money from the CCE.
 
 2. Ineffective assistance of counsel
 
 40
 Dunn's claim of ineffective assistance of counsel is also without merit. Ineffective assistance of counsel results when counsel's performance is deficient, and that deficiency results in prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 690 (1984). Dunn brings forth no evidence to show that but for counsel's performance he would have been acquitted. Absent such a showing, Dunn's ineffective assistance claim fails.
 
 D. Ward
 
 41
 1. Co-conspirator exception to the hearsay rule
 
 
 42
 Ward argues he was denied a fair trial by the government's use of hearsay statements to prove a conspiracy. Before the hearsay statements of co-conspirators can be used, the defendant's participation in the conspiracy must be established, United States v. Vinson, 606 F.2d 149, 152 (6th Cir.1979), cert denied, 444 U.S. 1074 (1980), by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Enright, 579 F.2d 980, 986 (6th Cir, 1978).
 
 
 43
 A co-conspirator's statements are properly admitted if the government establishes the conspiracy with non-hearsay evidence. Vinson, 606 F.2d at 153. In the instant case, the government supplied ample non-hearsay evidence to make a prima facie showing of a conspiracy. Craig testified that he witnessed a drug deal between Ward and Dunn. Following Craig's testimony, Spencer provided first hand testimony about Ward's participation in Dunn's drug conspiracy. He testified about bringing Dunn over to Ward's home to provide him with the money to purchase drugs in Florida. He also testified to seeing Ward in possession of more than one kilogram of cocaine when they were returning from Florida. There was additional testimony of other co-conspirator witnesses implicating Ward. There is ample evidence to overcome the preponderance standard.
 
 2. Pro se motion for a new trial
 
 44
 A defendant may make a motion for a new trial in the interests of justice. Fed.R.Crim.P. 33. Ward argues the interest of justice requires he receive a new trial due to ineffective assistance of his counsel. Ward's argument is unpersuasive. In order to prevail on an ineffective assistance claim, Ward must demonstrate that his counsel's performance was deficient and that he was prejudiced by that deficiency. Strickland, 466 U.S. at 694. The evidence against Ward is so overwhelming that even if he proved a deficiency in counsel's performance, the deficiency would not have had any impact on the determination of Ward's guilt.
 
 III. Conclusion
 
 45
 For the reasons stated, we AFFIRM the conviction and sentences imposed by the Honorable Sandra S. Beckwith, United States District Court Judge for the Southern District of Ohio.